UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBERT MARRIOT MEDICAL CORP. D/B/A ADVANTAGE WOUND CARE, INC.,** | : : : : | **CIVIL ACTION NO.: 6-25-CV-00834-RRS-CBW** |
| **Plaintiff,** | : : | |
| **VERSUS** | : : : | **JUDGE ROBERT R. SUMMERHAYS** |
| **WELLSPRING WOUND CARE, LLC, CHAD BAILEY, AND RACHAEL BAILEY** | : : : : : | **MAGISTRATE JUDGE CAROL B WHITEHURST** |
| **Defendants** | : | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM

Plaintiff Robert Marriot Medical Corp. d/b/a Advantage Wound Care, Inc. ("Plaintiff" or "Advantage"), by and through its attorneys, hereby submit this Memorandum in Support of its Motion to Dismiss the Counterclaim (ECF 13, the "Counterclaim") filed by Wellspring Wound Care LLC ("Wellspring"), Chad Bailey, and Rachael Bailey (the "Baileys" and, together with Wellspring, the "Defendants").

## INTRODUCTION

Ms. Bailey resigned from Advantage to start and/or join a competitor, Wellspring, and, within days of her resignation, she successfully poached—at an alarming rate which Advantage does not believe was possible absent unfair competition—many Advantage customers whom Advantage had entrusted her to service as its highly-trusted employee. While Ms. Bailey systematically targeted Advantage's customers, her husband, Mr. Bailey, remained an Advantage employee. He helped Ms. Bailey divert business away from Advantage while he was still in Advantage's employ.

1

#104243719v14

Worse, the Baileys—in cooperation with Wellspring—poached Advantage's customers while improperly in possession of and/or using Advantage's business information in violation of non-disclosure obligations. The Baileys engaged in this conduct notwithstanding the fact that they agreed to non-compete and non-solicit provisions that, only after their separations, they claimed are invalid. Advantage's lawsuit does not rely on these contested provisions, as it instead focuses on the Baileys' breach of their duty of loyalty and misuse and retention of Advantage's business information. Though Defendants' counterclaim suggests otherwise, Advantage does not seek any injunctive relief preventing the Baileys from working or competing; rather, Advantage asks only for the return and discontinued use of its business information and to recover the damages it has sustained through Defendants' unlawful conduct.

Before Advantage filed this lawsuit, the Baileys agreed to provide Advantage with pre-suit discovery through an agreed forensic protocol, which they were free to decline to engage in, and which uncovered the following facts detailed in Advantage's complaint:

- On May 29, 2024, three weeks before her separation from Advantage, Mrs. Bailey sent two text messages to different Advantage clients stating: ". . . I wanted to give you a heads up I put my 2 weeks notice in with [A]dvantage to pursue an opportunity that came up. I will still be doing rounds there the next 2 weeks like normal and my number won't change. [B]ut just wanted to give you a heads up."

   *By saying "my number won't change," this text went beyond informing a client about an upcoming separation, and this text instead was an overt solicitation of business while Mrs. Bailey was still employed by Advantage.*

- On May 31, 2024, again around three weeks before her separation from Advantage, Mrs. Bailey sent two text messages to different Advantage clients stating: "Hey! I just wanted to give you a heads up[.] I put in my 2 week notice in with [A]dvantage to pursue an opportunity that came up. I will still be doing rounds there for the next additional 2 weeks like normal. Katelyn is working on finding someone to take my place

and will let you know asap. [M]y number won't change, y'all can always reach out, but just wanted to give you a heads up."

*By saying "my number won't change," this text went beyond informing a client about an upcoming separation, and this text instead was an overt solicitation of business while Mrs. Bailey was still employed by Advantage.*

- On June 6, 2024, over three months before his separation, Mr. Bailey sent a text: "To hire people for my new company. But you can't say anything about it yet[.]"

  *This text suggests Mr. Bailey was recruiting key talent for his new venture instead of bringing the opportunity of hiring them to Advantage.*

- On June 12, 2024, five days before her separation from Advantage, Mrs. Bailey texted a group, which included Mr. Bailey: "I'm telling everybody they can reach out to me on Tuesday and I can update them on my latest venture, I hope y'all have something for me to tell them. And like a contact person I can send them to if they ask for one."

  *This text establishes that Mrs. Bailey was soliciting clients to follow her to her new employer while still employed by Advantage, and she was working with Mr. Bailey in this regard while he, too, was still employed by Advantage.*

- On July 30, 2024, a month before his separation, Mr. Bailey sent a text: "Please add [M]ontez [C]redeur to your list got verbal consent."

  *This text suggests Mr. Bailey signed Montez Credeur up as a new client for his new venture while still employed by Advantage.*

- On August 26, 2024, a month before his separation, Mr. Bailey sends a text: "Hey bud, Can just say you know someone that does wound care in the nursing home and if they have a need we can reach out. Thanks[.]."

  *This text suggests Mr. Bailey was actively soliciting work for his new venture while still employed by Advantage.*

- On September 4, 2024, almost a month before his separation, Mr. Bailey receives a text: "Morning! I heard you were leaving.

3

#104243719v14

> Is that your wound care company or just GH? I will surely miss you!"
>
> *This text suggests that Mr. Bailey was soliciting business for his new employment while still employed by Advantage.*

Given the specificity of Advantage's allegations, only a few of which are detailed above, Defendants did not seek dismissal of any of Advantage's claims under Rule 12(b)(6). And yet Defendants nevertheless allege in their counterclaim, as explained below, that Advantage's lawsuit against them is somehow an unfair trade practice. But that claim fails as a matter of law.

## SUMMARY OF THE ARGUMENT

Defendants' Counterclaim must be dismissed as a matter of law because their sole claim under the Louisiana Unfair Trade Practice Act, La. R.S. 51:1405 *et seq.* ("LUTPA") is simply an improper attempt to deny Plaintiff access to the legal process. Courts in Louisiana have routinely held that use of the legal process is not actionable under LUTPA. This is not an instance where Plaintiff has filed suit to enforce non-compete and/or non-solicit obligations it knows are unenforceable, and Defendants do not even seek dismissal of Plaintiff's claims against them because they are well-pled. For these reasons, as more fully explained below, Defendants' Counterclaim must be dismissed with prejudice.

## RELEVANT ALLEGATIONS IN DEFENDANTS' COUNTERCLAIM

Defendants generally allege that "[Advantage] through its personnel and management, have [sic] intentionally and deliberately engaged in a course of action in order to prevent and/or limit lawful competition and have intentionally and deliberately engaged in a course of conduct and actions in an effort to prevent or limit the Counterclaim Plaintiffs from engaging in lawful competition." (ECF 13, Defs' Counterclaim, at ¶ 3).

4

Defendants allege that Advantage, acting through its Chief Operating Officer, sent Chad Bailey "threatening text messages in an intentional and deliberate attempt to prevent him from competing and going to work for a competitor, Wellspring." (*Id.*, at ¶ 4). Specifically, Defendants allege that the text messages included "threatened enforcement of unenforceable restrictive covenants (non-compete and non-solicitation of customer restrictions) that fail to comply with Louisiana law and, in particular La. R.S. 23:921." (*Id.*).

Defendants similarly allege that Advantage sent letters requesting compliance with restrictive covenants in the Baileys' various agreements related to their employment with Advantage and that Mrs. Bailey cease her employment with Wellspring. (*Id.*, at ¶ 5). In short, Defendants allege that that the letters threatened legal enforcement, through litigation, of "knowingly unlawful restrictive covenants." (*Id.*). Defendants allege that these letters, requesting compliance with clear contract terms, were "designed and intended to prevent Chad Bailey and Racheal Bailey from working for a competitor, Wellspring, and . . . to directly and substantially interfere with Wellspring's lawful competition and negatively impact Wellspring's business." (*Id.*).

Defendants further allege that agents of Advantage contacted un-named customers of Wellspring and/or un-named potential customers of Wellspring and communicated "inaccurate or misleading information about [Defendants]." (*Id.*, at ¶ 6). Defendants assert that this vague, so-called "misleading information" included "misrepresentations about the existence of litigation and a lawsuit, which was not pending, against [Defendants] that would prohibit them from doing business with the customers," as well as "threats to customers that doing business with Wellspring or allowing the Baileys to perform wound care services at their facilities would result in the customers being involved in litigation and a non-existent lawsuit." (Complaint, ¶ 6).

Again focusing on the judicial process, Defendants allege that Advantage "escalated its efforts to interrupt and interfere with lawful competition by causing a lawsuit to be prepared, along with other pleadings, that Advantage threatened to file if [Defendants] did not cease competing with Advantage for wound care business . . . ." (*Id.*, at ¶ 7). Defendants assert that these pre-litigation communications by Advantage amounted to "an intentional and direct attempt to enforce unenforceable restrictive covenants (non-compete and non-solicitation of customer restrictions) that fail to comply with Louisiana law and a direct and intentional effort to limit competition, force Advantage's customers to remain with Advantage and not do business with [Defendants] . . . ." (*Id.*).

Defendants vaguely allege that Advantage, in an attempt to enforce "unlawful restrictive covenants," made false allegations—without specifying to whom they were made or how—"concerning alleged misappropriation and misuse of trade secrets." (*Id.*, at ¶ 8).

In reference to a pre-litigation forensic protocol agreement negotiated and mutually agreed to by the parties in an effort to avoid the filing of the Complaint, Defendants allege that Advantage "demanded, with the threat of filing the lawsuit and commencing litigation against the [Defendants], that the Baileys produce their cell phones for imaging and forensic examination under the guise of an alleged claim for misappropriation of trade secrets." (*Id.*). Defendants allege that the "forensic examination established that the devices did not contain any trade secrets of Advantage or any other confidential or proprietary information and/or documents." (*Id.*, at ¶ 9). Defendants further allege that the "forensic examination also established that no trade secrets or another confidential or proprietary information and/or documents were transmitted by the Baileys, either through text messages or email, to any representative of Wellspring or to their own personal email addresses." (*Id.*).

Defendants allege that "Advantage further escalated its efforts to prevent, limit and restrict lawful competition by filing the above captioned lawsuit purporting to allege multiple causes of action and claims for relief which have absolutely no basis in fact or law." (*Id.*, at ¶ 10). Defendants allege that Advantage "has made allegations without any factual support and Advantage's pursuit of litigation is an intentional and deliberate attempt to interfere with and disrupt Wellspring and the provision of wound care services by the Baileys and . . . to adversely affect, interfere with, restrict and/or eliminate lawful competition." (*Id.*, at ¶ 10).

Despite the fact that Advantage did not bring a claim for breach of the non-compete and non-solicit covenants signed by the Baileys, nor did it bring a claim for misappropriation of trade secrets, Defendants allege that all of "Advantage's actions and conduct to date, including the filing of the above-captioned lawsuit, amount to an attempt to enforce unenforceable restrictive covenants (non-compete and non-solicitation of customer restrictions) and to obtain relief that essentially amounts to non-competition and non-solicitation of customers." (*Id.*, at ¶ 11).

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than the sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombley*, 550 U.S. at 557). While a counterclaim's allegations are accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion to dismiss, a court must take the allegations

7

in a counterclaim to be true and based on those allegations, determine whether the plaintiff has stated a claim. However, allegations that are naked assertions of legal conclusions are not entitled to this treatment. *Id.*, at 678.

Defendants' Counterclaim asserts a single claim against Plaintiff under LUTPA, which outlaws "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A) & 1409(A). To state a claim for a LUTPA violation, Defendants must demonstrate that Plaintiff's actions "offend[] established public policy and [are] immoral, unethical, oppressive, unscrupulous or substantially injurious." *Quality Envtl. Processes, Inc. v. I.P. Petro. Co.*, 2013-1582 (La. 05/07/14), 144 So. 3d 1011, 1025. "[T]he range of prohibited practices under LUTPA is ***extremely narrow***" as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. *Id.* (emphasis added). Further, "conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA." *Id.* Rather, "[o]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.* (citations omitted).

## LAW AND ARGUMENT

### I. Plaintiff's *pre-suit* correspondence is not actionable under LUTPA.

Defendants' LUTPA counterclaim largely focuses on allegations that Plaintiff requested, in pre-suit correspondence, that the Baileys abide by provisions in employment agreements they executed with Advantage. (Complaint, ¶ 4-5, 7). Defendants do not—and cannot—dispute that the Baileys signed those agreements. Rather, Defendants argue that two provisions in one of those agreements—namely, a non-competition provision and a non-solicitation provision—are invalid under La. Rev. Stat. 23:921 (Louisiana's non-compete statute) for hyper-technical reasons. That,

8

in turn, in Defendants' view, makes Plaintiff's pre-suit communications, which, incidentally, were designed to avoid litigation, actionable as a matter of law. *See, e.g.,* (Complaint, ¶ 4-5, 7).

But Plaintiff's pre-suit communications—even accepting as true that they threatened litigation related to enforcement of purportedly invalid restrictive covenants—do not give rise to claim for relief under LUTPA as a matter of law, particularly considering Plaintiff's eventual lawsuit does not even seek enforcement of those contested provisions. *See Boudreaux v. OS Rest. Servs., L.L.C.*, 58 F. Supp. 3d 634, 639 (E.D. La. 2014) (squarely addressing this discrete issue). The decision in *Boudreaux* is instructive on this point.

In *Boudreaux*, a former employee alleged that his former employer sent a "letter informing the [former employee] that he remained subject to the confidentiality, non-competition and non-solicitation provisions of his Employment Agreement and that defendants would be aggressive in enforcing [their] non-competition and confidentiality agreements." *Id.* at 639-640 (internal quotations and citations omitted). Like Defendants, the former employee in *Boudreaux* alleged that the competitive restrictions at issue were invalid under La. Rev. Stat. § 23:921. The *Boudreaux* court found that the former employee's allegation concerning threatening correspondence from his former employer, coupled only with conclusory allegations ***and no allegations regarding a lawsuit that was actually filed to enforce such unenforceable restrictive covenants***, does not support a LUTPA claim. *Id.* Here, it cannot be overstated that Plaintiff has ***not*** filed a lawsuit to enforce any non-compete or non-solicit covenants against the Defendants, and the lesson from *Boudreaux* is that the sort of pre-litigation correspondence at issue is not actionable. For this reason alone, Plaintiff's pre-litigation communications with Defendants, mostly through their counsel, do not support a LUTPA claim.

9

The outcome in *Boudreaux* is even more appropriate in this case, as the Louisiana Third Circuit Court of Appeal (which encompasses where Defendants reside) has upheld restrictive covenants in employment agreements notwithstanding the sort of after-the-fact, hyper-technical deficiency the Baileys raised for the first time after their separations. *See Allied Bruce Terminix Co. v. Guillory*, 94-319 (La. App. 3 Cir. 11/2/94), 649 So. 2d 652, 653; *Petroleum Helicopters, Inc. v. Untereker*, 98-1816 (La. App. 3 Cir. 3/31/99), 731 So. 2d 965, 968; *Monumental Life. Ins. Co. v. Landry*, 2002-891 (La. App. 3 Cir. 2/19/03), 846 So. 2d 798, 799 & 801 (reversing trial court's ruling that an employment agreement's non-competition covenants which did not specify parishes by name failed under the statute). Like the Baileys, the restricted employee in *Petroleum Helicopters, Inc.*, for example, was "surely aware of the parishes in which [the former employer] conducts its business" and, thus, where he was restricted from engaging in a similar business and soliciting customers. 731 So. 2d 965, at 968. Neither the Louisiana Supreme Court nor an *en banc* panel of the Third Circuit have specifically overruled the foregoing decisions; therefore, a good faith argument exists that trial courts within the Third Circuit remain bound by this line of cases.[1]

## II. Plaintiff's *filing of a lawsuit* that Defendants believe is unfounded is not actionable under LUTPA.

### A. Louisiana courts consistently find that LUTPA cannot be used to attack the sufficiency of allegations in a lawsuit.

The gravamen of Defendants' LUTPA counterclaim turns to Plaintiff's decision to file a lawsuit against them, which Defendants assert makes unfounded allegations, and which—Defendants claim—is therefore actionable under LUTPA. *See, e.g.,* (Counterclaim, ¶ 10) (" . . .

---

[1] For purposes of this proceeding, Plaintiff need not show that it would prevail in enforcing the restrictive covenants, as Plaintiff does not even seek their enforcement. Plaintiff merely addresses the jurisprudence of the Third Circuit to demonstrate that its pre-litigation communications—which are not actionable under LUTPA as a matter of law—nevertheless were grounded in a good faith interpretation of the law of the relevant jurisdiction. Put differently, claiming legal rights with an arguably viable basis under applicable jurisprudence cannot be said to "offend public policy" in the manner required to constitute a LUTPA violation. *See Quality Envtl. Processes*, 144 So. 3d, at 1025.

10

Advantage further escalated its efforts to prevent, limit and restrict lawful competition by filing the above-captioned lawsuit purported to allege multiple causes of action and claims for relief which have absolutely no basis in fact or law."); (*id.*, ¶ 11) ("Advantage's actions and conduct to date, including filing of the above-captioned lawsuit, amount to an attempt to enforce unenforceable restrictive covenants (non-compete and non-solicitation of customer restrictions . . . ."); (*id.*, ¶ 14) ("Additionally and because Advantage has asserted in the above-captioned lawsuit claims against the Counterclaim Plaintiffs under the Louisiana's Unfair Trade Practices Act which are without factual and legal merit and which are not well grounded in both fact and law . . ."). However, this argument, too, misses the mark as a matter of law.

Cognizant of the Louisiana Supreme Court's declaration that "LUTPA is an act of the legislature and cannot be applied to regulate or define the practice of law, including the conduct of attorneys," *see Quality Envtl. Processes, Inc.*, 144 So. 3d, at 1026, Louisiana courts consistently refuse to entertain claims that the processes of litigation fall within the extremely narrow range of unfair *trade* practices outlawed by LUTPA. *See Newton v. Brenan*, 14-423 (La. App. 5 Cir 12/16/14), 166 So. 3d 285, 288 (affirming trial court's dismissal of the plaintiff's LUTPA claim based on a "retaliatory lawsuit"); *GR. Rests., LLC v. Suzanne Savoy Santillo, LLC*, 18-637 18-702 (La. App. 3 Cir. 6/12/19), 275 So.3d 50, (affirming dismissal of a LUTPA claim alleging that a lawsuit was filed with improper "ulterior purpose"); *Glod v. Baker*, 04-1483, pp. 10-11 (La. App. 3 Cir. 3/23/05), 899 So. 2d 642, 649 ("[A]ppropriate resorts to the judicial process [are] not unfair trade practices.").

For example, in *Newton v. Brenan*, the Louisiana Fifth Circuit affirmed the dismissal of a LUTPA claim in litigation between former business partners. 166 So. 3d 285, at 288. One partner, Newton, sued the other, Brenan, for theft of company assets and insubordination. Brenan then

11

reconvened against Newton, claiming that Newton's claim was a "retaliatory lawsuit" that constituted a violation of LUTPA. *Id.* The court affirmed the dismissal of Brenan's LUTPA claim, because the behavior underlying the claim—Newton's filing of a lawsuit—"does not rise to the level of an unfair trade practice." *Id.*, at 289. The court reasoned that—even in hotly contested business disputes—a party's exercise of its valid rights to judicial process could not be considered an unfair trade practice subject to a LUTPA claim.

> [W]hile the lawsuit filed by William Newton on behalf of the LLCs was arguably the result of months of rancorous disputes between the parties, a review of the record reveals that Newton may arguably have some cognizable legal claims against Mr. Brenan and his family members. William Newton's effort to exercise his juridical rights in connection with these claims is not an unfair trade practice under LUTPA.

*Id.* The court, therefore, affirmed the dismissal of Brenan's LUTPA claim.

Similarly, in *GR Rests.*, the court dismissed a LUTPA claim in addition to an abuse of process claim. (La. App. 3 Cir. 6/12/19), 275 So.3d 50, at 61. In that case, Santillo brought a LUTPA claim against GRR and claimed that GRR's lawsuit was filed with an ulterior motive to affect settlement negotiations between the parties. In no uncertain terms, the court there held that there was "no merit in Santillo's argument that LUTPA applies to an attorney who files a petition for damages on behalf of his client." *Id.* Like the Court in *Newton*, the court reasoned that "GRR's attempt to exercise its juridical rights by filing its [] lawsuit is not an unfair trade practice under LUTPA." *Id.* Accordingly, the court affirmed dismissal of Santillo's LUTPA claim.

Defendants have not sought dismissal under Rule 12 of any of Plaintiff's claims, which is a concession that Plaintiff's claims are well-pled. The discovery process will establish whether Plaintiff's claims have merit, but, until then, Plaintiff cannot shoehorn a disguised abuse-of-process claim or a premature malicious prosecution claim into a LUTPA claim; and Louisiana

12

courts have definitively ruled that LUTPA is not a vehicle to assert a facially deficient abuse-of-process claim or an otherwise premature claim for malicious prosecution. *See Quality Envtl. Processes, Inc.*, 144 So. 3d, at 1026; *see Simpson v. Perry*, 03-116, p. 3 (La. App. 1 Cir. 07/14/04), 887 So. 2d 14, 16 (emphasis added) (holding that an action "arising out of allegations made in judicial proceedings and against a party to those proceedings ***cannot be brought until those proceedings are terminated.***" (citations omitted)). The underlying reasoning behind this policy is that "the claim for such damages can only be litigated after the litigant making the statements has been given the opportunity to prove them in the suit in which they were made and has failed to do so." *Simpson*, 887 So. 2d 14, at 16. If this were the case, the floodgate would open for LUTPA counterclaims in every case wherein a party, unsurprisingly, denies allegations against it.

### B. Defendants' focus on the Baileys' non-compete and non-solicit obligations is a red herring, as Plaintiff asserts no claim under them.

To overcome this foregoing caselaw, Defendants try desperately to make this case about Plaintiff trying to enforce the (purportedly invalid) non-compete and non-solicit provisions discussed *supra*. Yet at risk of belaboring the point, while the Complaint asserts eight causes of action related to the substantial wrongdoing committed by Defendants, ***not a single one of them alleges violations of "non-compete and non-solicitation of customer" restrictions found in the Baileys' Employment Agreements***. To put a finer point it, with respect to the Employment Agreements, Plaintiff only alleges that the Baileys violated the return-of-property and non-disclosure provisions contained therein. (Complaint, ¶¶ 56-62). For that exact reason, Plaintiff does **_not_** seek any injunctive relief stopping the Baileys from working for Wellspring. (*Id.*, at ¶¶ 56-62 & p. 32) (seeking only the discontinued use and/or return of Plaintiff's business information). Thus, just like in the cases cited above, Defendants in this case have sought relief

13

under LUTPA when Plaintiff has done nothing more than seeking redress for its legal claims in a court of competent jurisdiction.

### C. The pre-suit forensic protocol does not support a LUTPA claim.

Defendants also invoke a pre-litigation forensic protocol agreement to suggest that it has been "established that no trade secrets or any other confidential or proprietary information and/or documents were transmitted by the Baileys [to Wellspring]." (Counterclaim, at ¶ 9). Defendants' reliance on the forensic protocol in this regard is misplaced for at least two reasons. First, Plaintiff has not asserted any cause of action for misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act. Second, Plaintiff identified (and included in the Complaint) specific communications uncovered by the forensic protocol—as well as specific facts from its own internal investigations—that support its non-trade secret causes of action, including, as examples, the below:

- During this early internal audit, Advantage learned that Mrs. Bailey was secretly accessing on multiple occasions, without authorization, Advantage's protected email servers after her resignation, even though she was no longer employed by Advantage. That access allowed her to see virtually everything she was able to see while she was an Advantage employee, including: patient records, facility lists, and a teams directory.

- Advantage learned that Mr. Bailey was sending Advantage patient lists to Mrs. Bailey while he was still an Advantage employee, but she was a Wellspring employee. These lists contained confidential information and protected health information including patient names, dates of service, and CPT codes.

- Advantage also learned that after Mrs. Bailey's resignation and while Mr. Bailey was still an Advantage employee, on August 4, 2024, Mr. Bailey sent an email from his personal yahoo email account to Mrs. Bailey's personal yahoo email account with the subject line "charge audit." The email contained an excel attachment entitled "WELLSPRING_ChargeAudit_072024 (1)" listing Advantage patient names, dates of service and CPT codes. Later that

14

> same day, Mrs. Bailey forwarded this message and attachment from her personal yahoo email account to her Advantage email account.
>
> - Advantage also discovered that Mr. Bailey was secretly accessing on multiple occasions, without authorization, Advantage's protected email servers and had access to Advantage's Electronic Medical Record system following his separation. That access allowed him to see everything he was able to see while he was an Advantage employee, including: patient records, facility lists, and a teams directory

(Complaint, ¶¶ 45-58). Glaringly, Defendants have not sought dismissal of Plaintiff's claims, and, at best, Defendants invoke the forensic protocol to simply contest issues of fact asserted in Plaintiff's lawsuit (and to assert premature malicious prosecution-type arguments). However, as discussed *supra*, those disputes of fact do not give rise to a LUTPA claim, and they will instead be tested in discovery.[2]

### III. Defendants' remaining allegations are vague, conclusory, and insufficient under Rule 9 (and even Rule 8) to state a LUTPA claim.

The remaining basis for Defendants' LUTPA counterclaim rests on threadbare allegations concerning false communications and misrepresentations made by Plaintiff to Defendants and/or Wellspring's customers. *See, e.g.,* (Counterclaim, at ¶ 8) ("[i]n addition to attempting to enforce unlawful restrictive covenants, Advantage also made ***false allegations*** concerning alleged misappropriation and misuse of trade secrets.") (emphasis added); (*id.*, at ¶ 6) ("Advantage personnel contacted customers of Wellspring and/or potential customers of Wellspring and ***communicated to them inaccurate or misleading information*** Wellspring, Rachael Bailey and Chad Bailey.") (emphasis added); (*id.*) ("this included . . . ***misrepresentations*** about the existence of litigation and a lawsuit, which was not pending, against the Baileys and/or Wellspring that

---

[2] Notably, due to the restrictive limitations of the forensic protocol, Plaintiff needs discovery to determine what other actions the Baileys took—in connection with Wellspring—to improperly divert business away from Plaintiff

would prohibit them from doing business with customers.") (emphasis added). The gravamen of this aspect of Defendants' LUTPA counterclaim, then, is that Plaintiff engaged in fraudulent misrepresentations designed to harm Defendants.

But when the primary thrust of LUTPA allegations (and, indeed, in this case, the sole remaining supporting basis) relate to alleged "false," "inaccurate," "misleading," and fraudulent statements and representations, they must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).[3] *Rahman v. Allstate Ins. Co.*, 644 F. Supp. 3d 231, 241 (E.D. La. 2022) (LUTPA claim based on fraudulent misrepresentations subject to Rule 9(b) even though Plaintiff did "not specifically use the word 'fraud' in relation to his LUTPA claim"); *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009) ("LUTPA claim [] based on defendants' allegedly fraudulent misrepresentation . . . must meet the heightened pleading requirements of Rule 9(b)."); *Apollo Holding Co., LLC v. Roe*, 2025 U.S. Dist. LEXIS 98270, at *46 (E.D. La. May 22, 2025) (citation omitted) (applying Rule 9(b)'s pleading standards to LUTPA claims regarding alleged fraudulent misrepresentations which necessarily "raise the issue of fraud"); *see also Adams v. Anderson*, No. 24-2432, 2025 U.S. Dist. LEXIS 149017, at *7 (E.D. La. Aug. 1, 2025) (dismissing a defamation claim after finding that the plaintiff "provide[d] no specific allegations as to the content of the allegedly false statements made by Gibbs, or when, through which medium, or to whom the statements were made. This extremely generalized pleading does not provide Gibbs notice of the claim . . .").

---

[3] "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-178 (5th Cir. 1997). The Rule requires that the claimant "set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Williams v. Bell Gelicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quotations omitted).

Here, Defendants have not even come close to identifying an actual statement which they contend to be fraudulent or defamatory, let alone name the speaker, the location, or the time such statement was made. Defendants' remaining LUTPA allegations therefore do not meet the heightened pleading standard imposed by Rule 9(b). Further, even under Rule 8's relaxed pleading standard, Defendants' vague and conclusory allegations should be disregarded by the Court when evaluating the sufficiency of Defendants' LUTPA counterclaim, and Plaintiff's ill-defined communications with Defendants and/or customers are simply insufficient to state a LUTPA claim. *See CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. 2011 U.S. Dist. LEXIS 82902, at *29 (E.D. La. Jul. 28, 2011) (dismissing a similar counterclaim under the normal pleading standard and weighing that "Defendants do not even allege to whom the statements were made. More significantly, defendants do not allege that these statements were intentionally false . . . Defendants use the terms 'maliciously and wantonly' to describe the manner in which [plaintiffs] contacted RAM suppliers and clients 'to suggest' that they stop doing business with RAM and Guccione. That this was done 'maliciously and wantonly' is a conclusion. Defendants allege no specifics as to who was contacted, what was said, whether any coercive means were used, or what, if any, effect the alleged conduct had.").

## **CONCLUSION**

This is not a case of a competitor seeking to enforce unenforceable restrictive covenants, nor is it a case of a competitor asserting claims based on threadbare allegations. Rather, Plaintiff's claims are based on numerous, specific, and detailed factual allegations. Defendants may not like that they have been sued, and they may even think they will ultimately prevail on the claims against them. But until then, their LUTPA counterclaim amounts to nothing more than an attempt to prevent Plaintiff from seeking redress in this Court. LUTPA, however, only prohibits a very

narrow range of the most egregious unfair trade practices, and Defendants have not sufficiently alleged conduct which runs afoul of the statute. Because all possible bases offered by Defendants to support their LUTPA counterclaim are legally insufficient, the claim itself is legally insufficient as a matter of law and must be dismissed under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*/s/ Joseph F. Lavigne*
Joseph F. Lavigne (La. Bar #28119)
Michael A. Foley (La. Bar #35774)
JONES WALKER LLP
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8610
Fax: (504) 589-8610
jlavigne@joneswalker.com
mfoley@joneswalker.com
***Attorneys for Plaintiff, Robert Marriott Medical Corp. d/b/a Advantage Wound Care, Inc.***

## **CERTIFICATE OF SERVICE**

I certify that on September 12, 2025, a copy of the foregoing pleading was filed on all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Joseph F. Lavigne*
Joseph F. Lavigne (La. Bar #28119)

#104243719v14