UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

ROBERT MARRIOT MEDICAL          CIVIL ACTION NO. 6:25-cv-00834
CORP. D/B/A ADVANTAGE
WOUND CARE, INC.

VERSUS                          JUDGE ROBERT R. SUMMERHAYS

WELLSPRING WOUND CARE,
LLC, CHAD BAILEY, AND
RACHEAL BAILEY                  MAG. JUDGE CAROL B. WHITEHURST
*****************************************************************************

## <u>MEMORANDUM IN OPPOSITION TO<br>RULE 12(b)(6) MOTION TO DISMISS COUNTERCLAIM</u>

Respectfully submitted,

/s/Joel P. Babineaux
Joel P. Babineaux, LA #21455 (T.A.)*
E-mail: jbabineaux@bpasfirm.com
Karen T. Bordelon, LA #20114
E-mail: kbordelon@bpasfirm.com
Sarah B. Dupont, LA #35048
Email: sdupont@bpasfirm.com
Attorneys for Wellspring Wound Care,
LLC, Chad Bailey and Racheal Bailey
Babineaux, Poché, Anthony
    & Slavich, L.L.C.
Post Office Box 52169
Lafayette, LA  70505
Phone: (337) 984-2505
Fax: (337) 984-2503
* Board Certified Employment Law Specialist
  Louisiana Board of Legal Specialization

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT MARRIOTT MEDICAL CORP. D/B/A ADVANTAGE WOUND CARE, INC. | * | CIVIL ACTION NO. 6:25-cv-00834 |
| VERSUS | * | JUDGE ROBERT R. SUMMERHAYS |
| WELLSPRING WOUND CARE, LLC, CHAD BAILEY, AND RACHEAL BAILEY | * | MAG. JUDGE CAROL B. WHITEHURST |

*******************************************************************************

**MEMORANDUM IN OPPOSITION TO**
**RULE 12(b)(6) MOTION TO DISMISS COUNTERCLAIM**

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.     LAW GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) ....................................................................3

III.    THE LOUISIANA UNFAIR TRADE PRACTICES ACT, LA.R.S. 51:1401, ET SEQ. ("LUTPA") ........................................................................................5

IV.     LEGAL ANALYSIS............................................................................................9

      A.      Advantage Relies Upon Inapposite Caselaw Which Does Not Support its Rule 12(b)(6) Motion to Dismiss Counterclaim....................................9

      B.      Applicable Caselaw Warrants the Denial of Advantage's Rule 12(b)(6) Motion to Dismiss Counterclaim..............................................14

V.      THE COUNTERCLAIM PLAUSIBLY ALLEGES FACTS WHICH SUPPORT A COGNIZABLE CLAIM FOR RELIEF UNDER LUTPA. THEREFORE, ADVANTAGE'S RULE 12(B)(6) MOTION TO DISMISS THE COUNTERCLAIM MUST BE DENIED................................................16

VI.     ADVANTAGE'S ALLEGATION OF FAILURE TO PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(B) MUST BE REJECTED ......................23

VII.    CONCLUSION.................................................................................................27

i

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT MARRIOTT MEDICAL CORP. D/B/A ADVANTAGE WOUND CARE, INC. | * | CIVIL ACTION NO. 6:25-cv-00834 |
| VERSUS | * | JUDGE ROBERT R. SUMMERHAYS |
| WELLSPRING WOUND CARE, LLC, CHAD BAILEY, AND RACHEAL BAILEY | * | MAG. JUDGE CAROL B. WHITEHURST |

**************************************************************************

**MEMORANDUM IN OPPOSITION TO
RULE 12(b)(6) MOTION TO DISMISS COUNTERCLAIM**

**TABLE OF AUTHORITIES**

**Cases**

*Alpha Omega Publications, Inc. v. Mid-S. Educ. Ass'n, Inc.*, 2006 WL 8459440, at *1, 2 (W.D. La. 2006), adopted 2006 WL 8459508 (W.D. La. 2006)..........................................15

*Apollo Holding Co., LLC v. Roe*, 2025 WL 1474738, at *16 (E.D. La. 2025).............................25

*Ashcroft v. Iqbal*, 556 U.S. 662, 678: 129 S.Ct. 1937, 1949 (2009)..................................................3

*Baker Mfg. Co. v. Next Techs., Inc.*, 2016 WL 952045, at *6 (W.D. La. 2016)(accord) .............25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-558, 570; 127 S.Ct. 1955, 1965 (2007) ......3, 4, 26

*Boudreaux v. OS Rest. Servs., L.L.C.*, 58 F. Supp.3d 634, 640 (E.D. La. 2014)...........9, 11, 16, 17

*Boudreaux v. OS Rest. Servs., L.L.C.*, 2015 WL 349558, at *1, 3-41 (E.D. La. 2015) ..................................................................6, 7, 9, 14, 19, 22, 23

*Brand Coupon Network, LLC v. Catalina Mktg*, 748 F.3d 631, 635 (5th Cir. 2014) .......................4

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)...................................4

*F&M Mafco, Inc. v. Ocean Marine Cont., LLC*, 2019 WL 3306521, at *2, 4-5 (E.D. La. 2019) .............................................................................................4, 14

*Ferrellgas, L.P. v. McConathy*, 2010 WL 1010831, at *3-4 (W.D. La. 15, 2010)..........6, 7, 17, 19

ii

*GR Restaurants, LLC v. Suzanne S. Santillo, LLC*, 2018-637 (La. App. 3 Cir. 6/12/19); 275 So.3d 50, 61 ...............................................................................................12, 13

*Gearheard v. De Puy Orthopaedics, Inc.*, 2000 WL 533352, at *5 (E.D. La. 2000) ....................7

*Glod v. Baker*, 2004-1483 (La. App. 3 Cir. 3/23/05); 899 So.2d 642, writ denied, 2005-1574 (La. 1/13/06); 920 So.2d 238 .............................................................................................13

*Green v. Garcia-Victor*, 2017-0695 (La. App. 4 Cir. 5/16/18, 6-7); 248 So.3d 449, 454, writ denied 2018-0994 (La. 10/8/18); 253 So.3d 800...........................................................6

*H.B. Rentals, LC v. Bledsoe*, 2009-478, p. 6 (La. App. 3 Cir. 11/4/09); 24 So.3d 260, 263 .....7, 19

*In re Gulf Fleet Holdings, Inc.*, 2011 WL 1313901, at *8 (Bankr. W.D. La. 2011) ....................18

*In re Padco Energy Servs. LLC*, 2019 WL 1421757, at *4-5 (W.D. La. 2019) ...........................15

*Innovative Manpower Sols., LLC v. Ironman Staffing, LLC*, 929 F.Supp.2d 597, 616 (W.D. La. 2013) ....................................................................................................17, 18, 19

*Int'l Mezzo Techs., Inc. v. Frontline Aerospace, Inc.*, 2011 WL 13160329, at *2 (M.D. La. 2011) ................................................................................................................6, 14

*Jefferson v. Chevron U.S.A., Inc.*, 97-2436, p. 13 (La. App. 4 Cir. 5/20/98); 713 So.2d 785, 792-93, writ denied, 98-1681 (La. 10/16/98); 727 So.2d 441 .............................................6

*Johnson*, 724 F.Supp.2d at 620-21...........................................................................................17

*Luv 'N Care v. Laurain*, 2021 WL 7907283, at *17-18 (W.D. La. 2021)......................6, 9, 14, 16

*Luv 'N Care, Ltd. v. Jacket Int'l Ltd.*, 2020 WL 6881672, at *6 (W.D. La. 2020) ............3, 16, 23

*Mabile v. BP, P.L.C.*, 2016 WL 5231839, at *25-26 (E.D. La. 2016)............................24, 25, 26

*Marshall v. Citicorp Mortgage Inc.*, 601 So.2d 669 (La. App. 5th Cir. 1992)................................9

*Melito v. Hopkins*, 2020 WL 2197916, at *4 (E.D. La. 2020)..............................................16, 25

*Newton v. Brenan*, 14-423 (La. App. 5 Cir. 12/16/14); 166 So.3d 285, 289 ..........................12, 13

*Nola Spice Designs, LLC vs. Haydel Enterprises, Inc.*, 783 F.3d 527, 553 (5th Cir. 2015)...........24

*Paradigm Health Sys., L.L.C. v. Faust*, 2016-1276, p. 4 (La. App. 1 Cir. 4/12/17); 218 So.3d 1068, 1072 .............................................................................................................6

*Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F.Supp.2d 710 (E.D. La. 2009) ...........................24

*Preis v. Standard Coffee Serv. Co.*, 545 So.2d 1010, 1013 (La. 1989) ...........................................7

*Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 151 So.3d 670, 678 (La. App. 4th Cir. 2014)....14

*Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582 (La. 5/7/14);
    144 So.3d 1011 ...........................................................................................................12, 13

*Rahman v. Allstate Ins. Co.*, 644 F.Supp.3d 231, 241 (E.D. La. 2022) .......................................24

*Rockwell Automation, Inc. v. Montgomery*, 2017 WL 2294687, at *3 (W.D. La. 2017) ..........6, 24

*Schenck v. Living Centers-East, Inc.*, 917 F.Supp. 432, 438-439 (E.D. La. 1996) .......................5

*Self v. U.S.*, 2025 WL 667762, at *2 (W.D. La. 2025), adopted 2025 WL 662415
    (W.D. La. 2025)........................................................................................................................3, 4

*Simpson v. Perry*, 03-116, p. 3 (La. App. 1st Cir. 7/14/04), 887 So.2d 14, 16.............................13

*Sugar Busters, L.L.C. v. Brennan*, 1999 WL 109564, at *4 (E.D. La. 1999) .................................5

*Team Environmental Servs., Inc. v. Addison*, 2 F.3d 124, 126-27 (5th Cir. 1993).......................17

*Tripp v. Pickens*, 2018 WL 6072027, at *3 (W.D. La. 2018), adopted 2018 WL 6072017
    (W.D. La. 2018) ..........................................................................................................................4

*Turner*, 989 F.2d 1419, 1422 (5th Cir. 1993) ...............................................................................4

*Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)................................................................3, 4

*U.S. v. City of San Antonio*, 2024 WL 4535630, at *4 (W.D. Tex. 2024)......................................3

*USI Ins. Servs., LLC v. Matthews*, 2019 WL 4882932, at *3 (E.D. La. 2019) .............................25

## **Statutes**

Fed. R. Civ. P. 8(a)(2)....................................................................................................................3

Fed. R. Civ. P. 9(b) ...........................................................................................................3, 24, 25, 27

Fed. R. Civ. P. 12(b)(6).......................................1, 2, 3, 4, 9, 10, 11, 12, 14, 15, 16, 18, 19, 23, 27

Fed. R. Civ. P. 15(a) .......................................................................................................4, 17, 27

La. R.S. 23:901 ............................................................................................................................7, 19

La. R.S. 23:921 ...................................................................................2, 6, 7, 10, 17, 19, 20

La. R.S. 23:921(C) ...............................................................................................7, 17

La. R.S. 51:1401, et seq. ......2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 22, 23, 24, 25, 26

La. R.S. 51:1405(A) ..............................................................................5, 7, 9, 22, 23

La. R.S. 51:1409(A) ...............................................................................5, 22, 23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT MARRIOT MEDICAL CORP. D/B/A ADVANTAGE WOUND CARE, INC. | CIVIL ACTION NO. 6:25-cv-00834 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| WELLSPRING WOUND CARE, LLC, CHAD BAILEY, AND RACHEAL BAILEY | MAG. JUDGE CAROL B. WHITEHURST |

*************************************************************************

**MEMORANDUM IN OPPOSITION TO**
**RULE 12(b)(6) MOTION TO DISMISS COUNTERCLAIM**

NOW INTO COURT, through undersigned counsel, come Defendants and Plaintiffs-in-Counterclaim, Wellspring Wound Care, LLC, Chad Bailey and Racheal Bailey (sometimes jointly referred to as the "Counterclaim Plaintiffs"), who submit this Memorandum in Opposition to the Motion to Dismiss Counterclaim filed by Robert Marriot Medical Corp. d/b/a Advantage Wound Care, Inc. ("Advantage") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Chad Bailey and Racheal Bailey previously worked as wound care nurses for Advantage. Advantage is in the business of providing wound care services to nursing homes and other establishments. Racheal Bailey separated her employment with Advantage on June 16, 2024 and subsequently became employed with Wellspring Wound Care, LLC ("Wellspring"). Chad Bailey separated his employment with Advantage on September 26, 2024 and also subsequently became employed with Wellspring. Advantage and Wellspring are competitors.

While employed with Advantage, the Baileys signed Employment Agreements which contained restrictions on competition and solicitation that violate Louisiana public policy and

1

statutory law, i.e., La. R.S. 23:921, thereby rendering them unenforceable.[1]

Wellspring and the Baileys have filed a Counterclaim in this action (Doc.13) which contains well-pled allegations showing the unfair and deceptive methods, acts and practices Advantage intentionally and deliberately used to hinder and deter Wellspring's and the Baileys' lawful competition following the separation of the Baileys' employment. The Counterclaim alleges that Advantage's unfair and deceptive methods, acts and practices interfered with and deterred lawful competition in violation of the Louisiana Unfair Trade Practices Act, LA. R.S. 51:1401, et seq. ("LUTPA"). The Counterclaim goes far beyond merely alleging that Advantage's lawsuit is ill-founded. It specifically alleges misconduct of Advantage commencing in July, 2024 and continuing through June 13, 2025 (the date Advantage filed its lawsuit) that is in violation of Louisiana public policy and statutory law and intended to stifle lawful competition in contravention of LUTPA.

More particularly, the well-pled allegations of the Counterclaim detail Advantage's unfair and deceptive methods, acts and practices including, without limitation, Advantage's many attempts to make an end-run around LUTPA's prohibition against the enforcement of invalid non-compete and non-solicitation agreements and Advantage's attempt to restrict, limit and delay competition in the wound care industry in Louisiana.

In its Rule 12(b)(6) motion, Advantages argues that the Counterclaim must be dismissed "as a matter of law" since Advantage's lawsuit does not seek an injunction or monetary damages against Wellspring or the Baileys. Advantage, however, cites no authority holding that electing not to seek an injunction or monetary damages creates an exception to LUTPA. Advantage also cites no authority holding as a matter of law, or otherwise, that the

---

[1] It is undisputed that the restrictive covenants contained in the Agreements did not list parishes or municipalities as required by La.R.S. 23:921, thus rendering the restrictions unenforceable as a matter of law.

2

pre-lawsuit demands, threats, misrepresentations and other misconduct of Advantage alleged in the Counterclaim fall outside the reach of LUTPA. Nor do the cases cited by Advantage support its contention that the Counterclaim does not plead sufficient allegations of fact under Fed. R. Civ. P. 9(b).

It is well-settled that due to LUTPA's broad sweep, Courts must determine what constitutes a LUTPA violation on a "case-by-case basis." *Luv 'N Care v. Laurain*, 2021 WL 7907283, at *17 (W.D. La. 2021). Moreover, on a Rule 12(b)(6) motion, the Court is tasked with determining whether a complaint states a plausible claim for relief, not whether it will ultimately succeed. *Self v. U.S.*, 2025 WL 667762, at *2 (W.D. La. 2025), adopted 2025 WL 662415 (W.D. La. 2025). Rule 12(b)(6) puts the burden on the movant to show that dismissal is warranted. *U.S. v. City of San Antonio*, 2024 WL 4535630, at *4 (W.D. Tex. 2024). For the reasons stated herein, Advantage's motion does not satisfy this burden and must be denied.

## II.     LAW GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S.Ct. 1955, 1965 (2007). In this regard, a complaint shall plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. To meet this standard, a complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011). In *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court held that a claim has facial plausibility when a "plaintiff pleads factual content that allows a Court to draw a reasonable inference that the defendant is liable for the misconduct alleged."

3

Rule 12(b)(6) motions to dismiss for failure to state a claim for relief are disfavored and sparingly granted. *Turner*, 663 F.3d at 775; *F&M Mafco, Inc. v. Ocean Marine Cont., LLC*, 2019 WL 3306521, at *2 (E.D. La. 2019). In assessing a complaint under Rule 12(b)(6), a Court must accept the well-pleaded facts as true and liberally construe them in a light most favorable to the plaintiff. *Brand Coupon Network, LLC v. Catalina Mktg.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court must then determine whether the plaintiff has stated a legally cognizable claim that is plausible, not whether the plaintiff will prevail. *Self*, supra, 2025 WL 667762, at *2; *Tripp v. Pickens*, 2018 WL 6072027, at *3 (W.D. La. 2018), adopted 2018 WL 6072017 (W.D. La. 2018). When considering a Rule 12(b)(6) motion, the Court limits itself to the contents of the pleading and its exhibits. *Collins v. Morgan Stanley,* 224 F.3d 496, 498 (5th Cir. 2000).

Taken as true on a Rule 12(b)(6) motion, the complaint's factual allegations need simply raise a right to relief "above the speculative level." *Twombly*, 550 U.S. at 556. If the motion is granted, Fed. R. Civ. P. 15(a) requires that leave to amend the complaint be freely granted.

In its Memorandum in Support, Advantage erroneously argues that Wellspring and Baileys admit that Advantage's Complaint states a claim since they did file not a Rule 12(b)(6) motion of their own. Advantage cites no legal authority for its contention. Whether a motion is filed under Rule 12(b)(6) is often a matter of strategy. Indeed, Rule 12(b)(6) motions are disfavored and rarely granted. *Turner*, supra. The decision not to file such a motion is not an admission that a complaint is well-pled or states a claim.

To be sure, Wellspring and the Baileys have made no such admission in this case. Instead, they filed the instant Counterclaim and, as stated in the parties' Rule 26(f) Report, intend to pursue a Rule 56 Motion for Summary Judgment seeking dismissal of all of Advantage's claims.[2]

---

[2] Rule 26(f) Report, Doc. 22

Furthermore, in the First Defense of their Answer pleading, Wellspring and the Baileys expressly allege that Advantage's Complaint fails to state a claim.[3] Moreover, Wellspring and the Baileys expressly assert in their responsive pleadings that Advantage's claims are "groundless and brought by Plaintiff in bad faith" and that Advantage's claims "are without factual or legal support and do not state a cognizable claim for relief" and that Advantages claims are "without factual and legal merit" and "are not well grounded in both fact and law."

Nevertheless, the sufficiency, or lack thereof, of Advantage's Complaint is not before the Court. Contrary to Advantage's claims, the Counterclaim does not assert only that Advantage has filed an unfounded lawsuit. Rather, the Counterclaim Plaintiffs' LUTPA claims set forth in factual detail the unfair and deceptive acts, practices and methods that Advantage has engaged from July, 2024 up to the date it initiated this lawsuit which Wellspring and the Baileys assert were intentional and deliberate acts to interfere with, limit, adversely affect and delay fair competition in the wound care industry in Louisiana.

### III.     THE LOUISIANA UNFAIR TRADE PRACTICES ACT, LA. R.S. 51:1401, et seq. ("LUTPA")

La. R.S. 51:1405(A) provides that: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. R.S. 51:1409(A) grants a right of action to anyone who suffers "any ascertainable loss" from a violation of LUTPA. The purpose of LUTPA is to deter injury to competition. *Schenck v. Living Centers– East, Inc*., 917 F.Supp. 432, 438-439 (E.D.La.1996). The statute protects business competitors from losses resulting from the unfair or deceptive methods, acts or practices of another. *Id*. at 438; *Sugar Busters, L.L.C. v. Brennan*,1999 WL 109564, at *4 (E.D. La. 1999).

---

[3] Defendants' Defenses with Answer and Counterclaim, Part I, First Defense, Doc. 13

LUTPA provides a cause of action for acts or practices which are "unfair" or "deceptive." *Green v. Garcia-Victor*, 2017-0695 (La.App. 4 Cir. 5/16/18, 6–7); 248 So.3d 449, 454, writ denied, 2018-0994 (La. 10/8/18); 253 So.3d 800.  Thus, an act or practice is not required to be both unfair and deceptive to violate LUTPA. *Green,* supra.

An act or practice is "unfair" when it offends established public policy or when it is immoral, unethical, oppressive, unscrupulous or substantially injurious. *Jefferson v. Chevron U.S.A. Inc*., 97-2436, p. 13 (La.App. 4 Cir. 5/20/98); 713 So.2d 785, 792–93, writ denied, 98-1681 (La. 10/16/98); 727 So.2d 441. An act or practice is "deceptive" when it amounts to fraud, deceit or misrepresentation. *Id*.; *Rockwell Automation, Inc. v. Montgomery*, 2017 WL 2294687, at *3 (W.D. La. 2017).

Due to the broad sweep of LUTPA's language, Courts determine what constitutes a LUTPA violation on a case-by-case basis. *Boudreaux v. OS Rest. Servs., L.L.C.,* 2015 WL 349558, at *3 (E.D. La. 2015); *Luv 'N Care*, supra, 2021 WL 7907283, at *17 ("A legal practice may be an unfair trade practice depending on the facts and circumstances of the particular case."); and *Int'l Mezzo Techs., Inc. v. Frontline Aerospace, Inc*., 2011 WL 13160329, at *2 (M.D. La. 2011) ("Misrepresentations or other unfair or deceptive conduct which prevents a person from partaking in a business activity constitute unfair trade practices under LUTPA.")

Unfair methods of competition violate Louisiana public policy as exemplified by La. R.S. 23:921 which renders "null and void" every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade or business of any kind except in the narrow circumstances set forth in the statute, which is strictly construed. *Paradigm Health Sys., L.L.C. v. Faust*, 2016-1276, p. 4 (La.App. 1 Cir. 4/12/17); 218 So.3d 1068, 1072; *Ferrellgas, L.P. v. McConathy*, 2010 WL 1010831, at *4 (W.D. La. 15, 2010) (Because of "the strong public policy

component involved, Louisiana courts have generally required "mechanical adherence to the requirements listed in [La. R.S. 23:901] (especially the geographical and time limitations).")

The provisions of La. R.S. 23:921, particularly those requiring geographical limitations by specifically itemizing and designating parishes and municipalities, are not merely "hyper technical" as Advantage claims. Rather, the lack of the requisite geographical limitations (by failing to itemize parishes or municipalities) will nullify an agreement. *Ferrellgas, supra; H.B. Rentals, LC v. Bledsoe*, 2009-478, p. 6 (La.App. 3 Cir. 11/4/09); 24 So.3d 260, 263. The non-compete and non-solicitation restrictive covenants in the Baileys' Employment Agreements are invalid and unenforceable because they fail to specify the requisite geographical limitations. La. R.S. 23:921(C).

The Louisiana Supreme Court has recognized an employer's obligation not to enforce illegal non-competition and non-solicitation agreements. *Preis v. Standard Coffee Serv. Co*., 545 So.2d 1010, 1013 (La.1989); see also *Gearheard v. De Puy Orthopaedics, Inc*., 2000 WL 533352, at *5 (E.D. La. 2000*); and *Boudreaux v. OS Rest. Servs., L.L.C.,* 2015 WL 349558, at *3-41 (E.D. La. 2015). As such, efforts to enforce an illegal non-competition or illegal non-solicitation agreement violate LUTPA. *Id*. Not only does a lawsuit which seeks to enforce invalid restrictive covenants violate LUTPA but so do any actions taken as a means to circumvent such illegal enforcement efforts. La. R.S. 51:1405(A); *Boudreaux*, 2015 WL 349558, at *3-4; *Luv 'N Care,* 2021 WL 7907283, at *17.

In the present case, Counterclaim Plaintiffs expressly allege that Advantage's COO started sending a series of threatening texts to Chad Bailey beginning in July, 2024 in which he expressly stated that Advantage would seek legal enforcement of the unenforceable restrictive covenants. Counterclaim Plaintiffs have also alleged that cease and desist letters were sent to the Baileys

demanding that they cease competition and that they discontinue their employment with Wellspring causing Wellspring to delay onboarding of new customers. Counterclaim Plaintiffs also have expressly alleged that Advantage personnel contacted customers of Wellspring and potential customers of Wellspring and communicated to them inaccurate and misleading information about Counterclaim Plaintiffs, including misrepresentations about the existence of a lawsuit (which was not pending) that would prohibit the Counterclaim Plaintiffs from doing business with them and that if the Baileys performed wound care services in their facilities, those customers would be involved in the litigation that did not exist.

Counterclaim Plaintiffs have also alleged that in November, 2024, the day before Thanksgiving, Advantage sent to Counterclaim Plaintiffs a lawsuit, along with other pleadings, that it threatened to file if Counterclaim Plaintiffs did not cease competition and which specifically sought to enforce unenforceable restrictive covenants, including the threat of injunctive relief.[4] Counterclaim Plaintiffs have also asserted additional pre-lawsuit actions and conduct of Advantage which Counterclaim Plaintiffs contend constitute unfair trade practices and in which Counterclaim Plaintiffs allege Advantage intentionally and deliberately engaged in order to limit, deter, restrict, prevent and adversely affect lawful competition in the wound care industry in Louisiana.

Counterclaim Plaintiffs respectfully submit that the Counterclaim states a plausible claim for legally cognizable relief based on the foregoing and on the Counterclaim's other well-pleaded LUTPA violations.

---

[4] The pleadings that Advantage sent to Counterclaim Plaintiffs and which they threatened to file by 4:00 p.m. on November 27, 2024 if Wellspring and the Baileys did not agree to injunctive relief preventing them from competing, along with other demands, included a Verified Complaint for Damages and Injunctive Relief, Motion for Temporary Restraining Order and to Set Preliminary Injunction Hearing, Memorandum in Support of Motion for Temporary Restraining Order and to Set Preliminary Injunction Hearing, Proposed Temporary Restraining Order, Motion for Expedited Discovery, Memorandum in Support of Motion for Expedited Discovery and proposed Order.

## IV.    LEGAL ANALYSIS

### A.  Advantage Relies Upon Inapposite Caselaw Which Does Not Support its Rule 12(b)(6) Motion to Dismiss the Counterclaim.

The Counterclaim plausibly alleges facts which support a cognizable claim for relief under LUTPA warranting denial of Advantage's Rule 12(b)(6) motion. Indeed, the LUTPA claim alleges far more than a mere assertion that Advantage's lawsuit is without factual or legal merit. When a party's conduct, including pre-litigation related and litigation related conduct, constitutes unfair methods of competition or unfair or deceptive trade practices, LUTPA is violated and an action alleging such conduct states a claim under LUTPA. See La. R.S. 51:1405(A*); Marshall v. Citicorp Mortgage Inc.*, 601 So.2d 669 (La. App. 5th Cir.1992)("[A]legal practice may be an unfair trade practice"…); *Luv 'N Care*, supra, 2021 WL 7907283, at *17.

In support of its Rule 12(b)(6) motion, Advantage relies heavily on the case of *Boudreaux v. OS Rest. Servs., L.L.C.*, 58 F.Supp.3d 634 (E.D. La.2014). Advantage describes the *Boudreaux* decision as "squarely addressing [the] discrete issue" raised by Advantage's motion.[5] In the cited decision, the Court granted Boudreaux's former employer's Rule 12(b)(6) motion to dismiss Boudreaux's LUTPA lawsuit for failure to state a claim; however, it allowed Boudreaux to amend the complaint, which he did.

Advantage fails to present and address the Court's subsequent decision in *Boudreaux v. OS Rest. Servs., L.L.C.*, 2015 WL 349558, at *1 (E.D. La. 2015). In this subsequent decision addressing a second motion to dismiss filed in response to Boudreaux's amended complaint, the Court held that Boudreaux's amended complaint stated a claim under LUTPA and the Court denied the Rule 12(b)(6) motion to dismiss.

---

[5] Advantage's Memorandum in Support, Doc.18-1, p.9

In his amended complaint, Boudreaux alleged that he had signed a non-compete agreement with his former employer, Outback Steakhouse, but that the agreement was invalid and unenforceable because it lacked the parish or municipality listing required by La. R.S. 23:921. Boudreaux then alleged that, after the separation of his employment, he sought employment with another steakhouse which would not hire him because of the restrictive covenants in his employment agreement with Outback, thus prompting Boudreaux to consult with counsel.

Boudreaux's amended complaint alleged that his counsel telephoned Joseph Kadow, an Outback executive, to discuss Boudreaux's claims but that the call was never returned. Boudreaux followed with a lawsuit seeking an injunction and a declaratory judgment regarding the non-competition agreement. In his amended complaint, Boudreaux alleged that "[f]ive days after the [his] Petition was filed," Outback sent him a letter stating that: "Outback Steakhouse is diligent in protecting its proprietary information and aggressive in enforcing its non-competition and confidentiality Agreements." Boudreaux's amended complaint also alleged that the Outback executive reiterated this position in a subsequent telephone call with Boudreaux's counsel.

In his amended complaint, Boudreaux alleged that Outback acted with knowledge that the restrictive covenants in his employment agreement were invalid and unenforceable. He further alleged that Outback acted maliciously and intentionally and breached their obligation not to enforce illegal non-competition and non-solicitation provisions and that such actions constituted a violation of LUTPA. The allegations of Boudreaux's amended complaint mirror those in the present Counterclaim.

In the 2014 ruling granting Outback's Rule 12(b)(6) motion, the Court refused to hold that a plaintiff who claims damages from the attempted enforcement of an allegedly invalid non-

competition agreement may never adequately state a LUTPA claim, holding instead only that Boudreaux had not done so in his original complaint. *Boudreaux*, 58 F.Supp.3d at 640.

In denying Outback's Rule 12(b)(6) motion to dismiss Boudreaux's amended complaint, the Court rejected Outback's argument that there is nothing fraudulent or deceitful about reminding a former employee that he signed an employment agreement that contains certain provisions that survive the termination of his employment and that there is also nothing fraudulent, deceptive, immoral, unethical, oppressive, unscrupulous, or substantially injurious about advancing purportedly legitimate arguments in response to Boudreaux's lawsuit. The Court also rejected Outback's argument that it had a "good faith belief" that the agreement was enforceable. The Court also recognized that other courts have ruled that the attempted enforcement of an illegal non-competition agreement can form the basis of a LUTPA claim.

Accepting the well-pled facts of Boudreaux's amended complaint as true and liberally construing all factual allegations in the light most favorable to Boudreaux, the Court in the subsequent *Boudreaux* decision held that Boudreaux had plausibly stated that Outback engaged in an "unfair or deceptive method, act, or practice." Outback's assertion that it acted in good faith was held to be irrelevant for the purpose of evaluating the amended complaint under Rule 12(b)(6), particularly since Boudreaux's allegations were required to be accepted as true. The Court also found that Boudreaux's amended complaint stated a claim for tortious interference with business relations under the same facts.

The end result in *Boudreaux* supports the Counterclaim Plaintiffs' position, not Advantage's. The ultimate holding in the *Boudreaux* case (on the defendant's second motion to dismiss), which Advantage admits is on point with the case at hand, actually warrants the denial, not the granting, of Advantage's Rule 12(b)(6) motion. The allegations set forth in the

Counterclaim are more expansive and more oppressive and egregious than the conduct set forth in Boudreaux's amended complaint.

The other cases relied upon by Advantage also fail to support its Rule 12(b)(6) motion. In *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582 (La. 5/7/14); 144 So.3d 1011, the Louisiana Supreme Court held that a discovery dispute, even one that might violate the discovery statutes or the ethics rules governing attorneys, does not fall within the ambit of LUTPA. However, the present LUTPA Counterclaim is not based on a discovery dispute. Instead, it alleges a series of unfair and deceptive methods, acts, and practices prohibited by LUTPA. The *Quality* case is inapplicable and does not support Advantage's motion.

In *GR Restaurants, LLC v. Suzanne S. Santillo, LLC*, 2018-637 (La. App. 3 Cir. 6/12/19), 275 So.3d 50, 61, having found that the plaintiff had successfully pleaded a detrimental reliance claim, the Louisiana Third Circuit Court of Appeals upheld the dismissal of the defendant's reconventional demand asserting abuse of process and LUTPA claims. In holding that the plaintiff had stated a valid claim for detrimental reliance, the Court effectively refuted the defendant's assertion that the underlying suit lacked merit, a logical antecedent for the defendant's claims. The Court did not hold that activities surrounding a legal dispute including, without limitation, pre-lawsuit conduct and the filing of a lawsuit are outside of the scope of LUTPA. The Court held instead that LUTPA does not ensure ethical and fair cooperation between attorneys. Like *Quality*, supra, the *GR* case is factually distinguishable from the case at hand and does not support Advantage's motion.

Advantage's reliance on *Newton v. Brenan*, 14-423 (La.App. 5 Cir. 12/16/14); 166 So.3d 285 is also misplaced. In *Newton*, in affirming the summary judgment dismissal of a LUTPA claim, the Court was careful to limit its holding, stating that: "Under the particular facts and

circumstances of this case, we find that the underlying behavior which forms the basis for [the] LUTPA claim does not rise to the level of an unfair trade practice." *Id*. at 289. The Court did not hold that the filing of a lawsuit may never serve as the basis for a LUTPA claim. Rather, as the Court explained, even if a LUTPA claim may be based on the filing of a lawsuit, the case before it did not involve the kind of conduct that would sustain a LUTPA claim. In *Newton*, the defendant had reconvened with a LUTPA claim asserting that the plaintiff only sued him in retaliation for his enforcement of a valid non-compete agreement between them. *Newton* did not involve attempts to enforce restrictive covenants that violated Louisiana's statutory requirements, nor did it involve unfair or deceptive acts, practices or methods of competition, and the Court did not hold that filing a lawsuit or resorting to other judicial process can never state a LUTPA claim. Like *Quality* and *GR Restaurant*, *Newton* is factually distinguishable from the present case and does not support Advantage's motion.

Advantage also relies on *Glod v. Baker*, 2004-1483 (La.App. 3 Cir. 3/23/05); 899 So.2d 642, writ denied, 2005-1574 (La. 1/13/06); 920 So.2d 238. In *Glod*, the Court held that a franchisor's resort to arbitration and judicial process did not violate LUTPA since no fraud, misrepresentation, deception or unethical conduct was involved. In *Glod*, the Court did not hold that resort to judicial process can never be a violation of LUTPA, only that Glod's summary judgment evidence did not satisfy LUTPA's requirements.

Neither *Quality*, *GR Restaurants*, *Newton* nor *Glod* provide authority for the dismissal of the Counterclaim "as a matter of law" as Advantage argues, nor does *Boudreaux.*

Advantage's reliance on *Simpson v. Perry*, 03-116, p.3 (La. App. 1st Cir. 07/14/04), 887 So.2d 14, 16 is also misplaced. *Simpson* was a defamation and false light invasion of privacy case, not a LUTPA case.

13

### B.  Applicable Caselaw Warrants the Denial of Advantage's Rule 12(b)(6) Motion to Dismiss Counterclaim.

If anything, the rule of law established by the cases cited by Advantage is that LUTPA violations are determined "case-by-case." *Boudreaux*, supra, 2015 WL 349558, at *3;  *Luv 'N Care*, supra, 2021 WL 7907283, at *17. For example in, *F&M Mafco, Inc. v. Ocean Marine Contractors, LLC*, 2019 WL 3306521, at *4 (E.D. La. 2019), the Court found that the use of illegal self-help tactics to collect a debt that the defendant knew the plaintiff did not owe stated a claim under LUTPA, denying the defendant's Rule 12(b)(6) motion to dismiss the claim. In denying the motion, the Court held that the complaint's allegations rose to the level of the sort of conduct that would support a LUTPA claim. *Id*. at *5.

Similarly, in *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co*., 151 So. 3d 670 (La. App. 4th Cir. 2014), the Court reversed a summary judgment for the defendant's and allowed the plaintiff's LUTPA claim to proceed. In *Prime*, the plaintiff-insurance company had sued a competitor alleging that it had violated LUTPA by filing and continuing to prosecute a prior lawsuit, for several years, despite knowing there were no damages. During the pendency of the lawsuit, the plaintiff-insurance company was prevented from writing insurance policies for taxi cabs in the Greater New Orleans area. The Court concluded that "[t]here is evidence that the continuation of the underlying suit may have operated to remove [the defendant's] main competitor from the New Orleans taxi cab insurance market. This type of behavior is exactly what the LUTPA seeks to prevent." *Id*. at 678. In *Prime*, as in the case at bar, it was not the prospect or award of injunctive relief or monetary damages against Prime that caused the prohibited injury to competition. Rather, the accusation itself of supposed misconduct by Prime was sufficient to sustain the LUTPA claim.

In *Int'l Mezzo Techs., Inc. v. Frontline Aerospace, Inc*., 2011 WL 13160329, at *2 (M.D. La. 2011), the Court observed that the plaintiff had not cited any legal authority holding that the

filing of a lawsuit, which knowingly alleges a false claim for the purpose of harming a business competitor, cannot form the basis for a valid LUTPA claim. As such, the Court denied plaintiff's summary judgment motion seeking dismissal of the LUPTA claim. In so doing, the Court held that a reasonable jury could conclude that the plaintiff violated LUTPA by making misrepresentations in an effort to enforce an invalid Non-Disclosure Agreement.

In *Alpha Omega Publications, Inc. v. Mid-S. Educ. Ass'n, Inc*., 2006 WL 8459440, at *1 (W.D. La. 2006), adopted 2006 WL 8459508 (W.D. La. 2006), the Court denied Alpha Omega's Rule 12(b)(6) motion to dismiss finding that Mid-South's counterclaim plausibly stated a cognizable claim under LUTPA. Mid-South's counterclaim alleged that when AOP learned that Mid-South was offering its "Navigator 1" software services to customers using AOP's products, AOP terminated its contracts with Mid-South, which prevented Mid-South from purchasing AOP products to use in its business. Mid-South's counterclaim also alleged that AOP contacted one or more businesses placing them on notice that if they used Mid-South's service, then AOP would not sell them AOP's products. AOP also fired an AOP salesman who offered Mid-South's services as an incentive to increase AOP's sales. In denying AOP's Rule 12(b)(6) motion, the Court said:

> Mid-South's counterclaim alleges facts which, when construed in the light most favorable to Mid-South, and particularly in light of the need for case by case analysis to determine whether particular actions constitute unfair trade practices, give rise to a viable claim against AOP. The allegations of the counterclaim are sufficient to state a claim for relief and to survive a motion to dismiss under F.R.C.P. Rule 12(b)(6); it is therefore recommended that AOP's Motion to Dismiss … be DENIED.

*Id.* at *2. See also *In re Padco Energy Servs., LLC*, 2019 WL 1421757, at *4-5 (W.D. La. 2019)(affirming denial of defendant's Rule 12(b)(6) motion and finding that a LUTPA claim was stated where the defendant allegedly overbilled the plaintiffs and, when challenged, filed improper liens to choke off the plaintiffs' cash flow driving them out of business and hastening their bankruptcy filings).

In *Luv 'N Care v. Laurain*, 2021 WL 7907283, at *18 (W.D. La. 2021), the Court denied a Motion in Limine asking the Court to exclude the plaintiff's LUPTA claim which was based on the defendants' bad faith decision to threaten competitors in order to avoid fair competition. The LUTPA claim also alleged that the defendant's continued prosecution of an infringement suit, despite the its knowledge that the infringement claims were objectively baseless, amounted to a violation of the LUTPA. The Court reiterated that the Louisiana Supreme Court has refused to hold that misconduct in connection with litigation can never amount to a LUTPA violation. *Luv 'N Care*, 2021 WL 7907283, at *18.

Finally, in *Melito v. Hopkins*, 2020 WL 2197916, at *4 (E.D. La. 2020), the Court denied plaintiff's Rule 12(b)(6) motion seeking dismissal of defendants' counterclaim which alleged that the plaintiff had knowingly or recklessly made false or misleading statements and representations in communications with the defendants' actual or prospective clients; wrongfully induced clients to do business with defendants' competitors; employed unfair methods of competition and engaged in unfair or deceptive practices; and/or knowingly employing methods or practices prohibited by LUTPA. The Court found that the defendant had sufficiently stated a LUTPA cause of action.

## V.    THE COUNTERCLAIM PLAUSIBLY ALLEGES FACTS WHICH SUPPORT A COGNIZABLE CLAIM FOR RELIEF UNDER LUTPA. THEREFORE, ADVANTAGE'S RULE 12(B)(6) MOTION TO DISMISS THE COUNTERCLAIM MUST BE DENIED.

As in *Luv 'N Care, Ltd. v. Jackel Int'l Ltd.*, 2020 WL 6881672, at *6 (W.D. La. 2020), Advantage's fatal flaw is that it ignores the very principles underlying a Rule 12(b)(6) motion, namely that the well-pled allegations of a complaint are taken as true and are construed in a light most favorable to the plaintiff. In addition, the authorities relied upon by Advantage, principally including the *Boudreaux* case, do not support its argument that the Counterclaim fails to state a claim as a matter of law. *Id*. Accordingly, Advantage's Rule 12(b)(6) motion must be denied. Even

16

if Advantage's motion were granted, Wellspring and the Baileys would nevertheless be permitted to amend their Counterclaim pursuant to Fed. R. Civ. P. 15(a), as in the *Boudreaux* case.

Notwithstanding, Advantage's motion must be denied. The non-competition and non-solicitation restrictive covenants in the Baileys' Employment Agreements are contrary to Louisiana public policy as set forth in La. R.S. 23:921 since they do not specify the "parish or parishes, or municipality or municipalities, or parts thereof," in which the restrictive covenants are to apply. See La. R.S. 23:921(C). As stated in *Innovative Manpower Sols., LLC v. Ironman Staffing, LLC,* 929 F.Supp.2d 597, 616 (W.D. La.2013):

> Louisiana state courts, noting Louisiana's strong public policy against covenants in derogation of the common right to work, require strict compliance with the geographic and other limitations of La. R.S. §23:921. … A majority of Louisiana state courts interpret §23:921 to require that an employment contract specifically list the parishes or municipalities affected by the non-compete or non-solicit agreement. The Fifth Circuit has likewise recognized that under Louisiana law a "contract seeking to fit into an exception to this rule must strictly comply with the requirements contained in the statute." *Team Environmental Servs., Inc. v. Addison,* 2 F.3d 124, 126–27 (5th Cir.1993)…The Western District has recognized this rule. See, e.g., *Johnson,* 724 F.Supp.2d at 620–21; *Ferrellgas,* at *3 ("[A] non-competition provision must be strictly limited to designated parishes and contain a maximum term of two years.").

Being well aware that the restrictive covenants in the Baileys' Employment Agreements violate Louisiana public policy and La. R.S.23:921, Advantage claims that its Complaint does not seek injunctive or monetary relief for their purported breaches of these covenants and therefore is not in violation of LUTPA. However, Advantage's Complaint contains a section entitled ***"The Employment Agreement and Its Restrictive Covenants."***[6] In this section, Advantage devotes multiple paragraphs to a discussion of the restrictive covenants, reproducing the full the text of each, while alleging that the covenants are reasonable. *Id.* Advantage further alleges that the

---

[6] Advantage's Complaint, Paras. 29-37, Doc. 1; Employment Agreements, Para. 8.4, Docs. 1-10 and 1-11

Baileys are bound by these restrictive covenants even if they are unenforceable because the Baileys agreed to them and that the restrictive covenants need only be reformed. *Id.*

However, reformation is clearly unavailable as the restrictive covenants lack geographical limitations which could be reformed. *In re Gulf Fleet Holdings, Inc*., 2011 WL 1313901, at *8 (Bankr. W.D. La. 2011) (Savings clauses cannot be used to add provisions omitted from a non-competition or non-solicitation agreement.) Also, the Employment Agreements specifically state that the Baileys agreed to the restrictive covenants only to the extent the covenants were valid under "the law and public policies applied in each jurisdiction in which enforcement is sought."[7]

Without question, the subject restrictive covenants are unenforceable. Advantage's assertion that the restrictive covenants could be saved somehow, because the Baileys supposedly agreed to them or because they can be reformed, is without merit and just another attempt at giving effect to these illegal provisions and thus unlawfully deterring competition. In any event, such arguments by Advantage do not support the assertion that the Counterclaim fails to state a claim under Rule 12(b)(6).

Along these same lines, Advantage's Memorandum in Support starts off alleging that the Baileys have breached the restrictive covenants in their Employment Agreements.[8] Advantage never strays from this position. Instead, Advantage argues that these allegations do not support a LUTPA claim because it does not seek recovery for these supposed breaches. This argument also does not support Advantage's motion. Rather, Advantage's not seeking recovery from the Baileys is an admission that these restrictive covenants are unenforceable which, in turn, renders Advantage's actions and attempts to effectuate and enforce these agreements violations of LUTPA.

---

[7] Employment Agreements, Para. 8.4, Docs. 1-10 and 1-11

[8] Advantage's Memorandum in Support of Rule 12(b)(6) Motion to Dismiss, Introduction, p.2, Doc. 18-1

Moreover, Advantage has not waived or released any claims against the Baileys for their alleged breach of these invalid and unenforceable restrictive covenants. Instead, Advantages holds on to their allegations of breach while disputing the enforceability of the restrictive covenants under Louisiana law and while asserting that they are valid regardless because the Baileys signed the Employment Agreements and because they can allegedly be reformed.[9]

In addition, Advantage's claim that enforceability is "disputed" is part of Advantage's attempt to wrap its unlawful conduct in the cloak of "good faith." However, the "assertion that [an employer] acted in good faith is irrelevant for the purposes of evaluating the [complaint] pursuant to 12(b)(6)." *Boudreaux*, 2015 WL 349558, at *4. Moreover, the decisions from the Louisiana Third Circuit of Appeals relied upon by Advantage do not even support its "good faith" argument.[10]

Advantage also fails to recognize that Wellspring and the Baileys focus their unfair trade practice allegations on pre-lawsuit conduct that they allege was designed and intended to deter and adversely affect competition in the wound care industry in Louisiana and that Advantage's

---

[9] The Employment Agreements establish that Advantage is not waiving or releasing the Baileys from any claims arising out of the subject restrictive covenants. The Employment Agreements contain a provision stating that "failure of [Advantage] at any time to require performance by Nurse Practitioner of any provision hereunder shall in no way affect the right of [Advantage] thereafter to enforce the same; and the waiver by [Advantage] of a breach of any provision of this Agreement, including this Section 8 [Restrictive Covenants], shall not operate as or be construed a waiver of any subsequent breach.  See Employment Agreements, Para. 8.8, Docs. 1-10 and Doc. 1-11. (Emphasis added.)  Likewise, Paragraph 19 of the Employment Agreements provides, in part, that "no delay or omission by either Party to exercise any right or remedy under this Agreement shall be construed to be either acquiescence or the waiver of the ability to exercise any right or remedy in the future."

[10] See Advantage's Memorandum, Doc. 18-1, at p. 10 and at FN 1. See the Louisiana Third Circuit's 2009 decision in *Bledsoe*, supra, 24 So.3d at 263 ("The agreement not to solicit current or potential customers of H.B. is overly broad to the point that the court is unable to reform it. In the latter regard, it fails in two respects: it does not designate the parishes or municipalities in which Bledsoe is prohibited from soliciting customers, and it purports to prohibit him from soliciting potential customers."). See also the subsequent case of *Ferrellgas*, supra, 2010 WL 1010831, at *4 (finding that Louisiana courts have generally required "mechanical adherence to the requirements listed in [La. R.S. 23:901] (especially the geographical and time limitations)."); and *Innovative*, supra, a 2013 case in which the Court found that a majority of Louisiana state courts interpret §23:921 to require that an employment contract specifically list the parishes or municipalities affected by the non-compete or non-solicit agreement.

deliberate and intentional conduct did in fact cause Wellspring damages in the form of lost and/or delayed revenues and the delay in onboarding of customers and the loss of business opportunities. In this regard, the Counterclaim includes the following specific and particularized allegations:[11]

3.

Since Chad Bailey announced that he would be resigning from Advantage, Counterclaim Defendant, through its personnel and management, have intentionally and deliberately engaged in a course of action in order to prevent and/or limit lawful competition and have intentionally and deliberately engaged in a course of conduct and actions in an effort to prevent or limit the Counterclaim Plaintiffs from engaging in lawful competition.

4.

Advantage, acting through its Chief Operating Officer, initially sent Chad Bailey threatening text messages in an intentional and deliberate attempt to prevent him from competing and going to work for a competitor, Wellspring.[12] This included, but was not limited to, threatened enforcement of unenforceable restrictive covenants (non-compete and non-solicitation of customer restrictions) that fail to comply with Louisiana law and, in particular, La. R.S. 23:921.

5.

In August, 2024 and before Chad Bailey's separation of employment, Advantage caused to be sent to Chad Bailey and Racheal Bailey threatening letters from its legal counsel demanding that they comply with purported restrictive covenants contained in certain Agreements and that Racheal Bailey cease and desist her employment with Wellspring. The letters threatened legal enforcement, through litigation, of knowingly unlawful restrictive covenants. This was designed and intended to prevent Chad Bailey and Racheal Bailey from working for a competitor, Wellspring, and it was intended to directly and substantially interfere with Wellspring's lawful competition and negatively impact Wellspring's business, including the potential loss of business or potential gain of business.

6.

Additionally, Advantage personnel contacted customers of Wellspring and/or potential customers of Wellspring and communicated to them inaccurate or misleading information about Wellspring, Racheal Bailey and Chad Bailey. This included, but was not limited to, misrepresentations about the existence of litigation and a lawsuit, which

---

[11] See Rec. Doc. 13.

[12] The text messages started in July 2024 and continued to September 2024.

was not pending, against the Baileys and/or Wellspring that would prohibit them from doing business with the customers. This further included threats to customers that doing business with Wellspring or allowing the Baileys to perform wound care services at their facilities would result in the customers being involved in litigation and a non-existent lawsuit. At the time that Advantage personnel engaged in such communications, there was no pending litigation and no lawsuit had been filed. Advantage's intentional and deliberate acts, conduct and communications caused a delay in Wellspring's onboarding and/or contracting with new customers which caused Wellspring economic losses and missed revenue opportunities.

7.

Despite Counterclaim Plaintiffs' attempting to work out a resolution of Advantage's frivolous demands and threats, Advantage escalated its efforts to interrupt and interfere with lawful competition by causing a lawsuit to be prepared, along with other pleadings, that Advantage threatened to file if the Counterclaim Plaintiffs did not cease competing with Advantage for wound care business, including wound care business in the nursing home industry. The threat of the filing of a lawsuit, which was prepared and presented by Advantage to the Counterclaim Plaintiffs in November, 2024, was an intentional and direct attempt to enforce unenforceable restrictive covenants (non-compete and non-solicitation of customer restrictions) that fail to comply with Louisiana law and a direct and intentional effort to limit competition, force Advantage's customers to remain with Advantage and not do business with Wellspring or be serviced by the Baileys and to adversely affect and interrupt the business operations of Wellspring and to prevent it from engaging in lawful competition.

8.

In addition to attempting to enforce unlawful restrictive covenants, Advantage also made false allegations concerning alleged misappropriation and misuse of trade secrets. Advantage also demanded, with the threat of filing the lawsuit and commencing litigation against the Baileys and Wellspring, that the Baileys produce their cell phones for imaging and forensic examination under the guise of an alleged claim for misappropriation of trade secrets.

9.

In an effort to avoid the threatened lawsuit and litigation, the Baileys, in good faith, voluntarily allowed their mobile devices to be imaged and a forensic examination conducted. The forensic examination established that the devices did not contain any trade secrets of Advantage or any other confidential or proprietary information and/or documents. The forensic examination also established that no trade secrets or any other confidential or proprietary information and/or documents were transmitted by the Baileys, either through text messages or email, to any representative of Wellspring or to their own personal email addresses.

10.

Despite Advantage's knowledge that the restrictive covenants that they asserted are unenforceable and despite Advantage's knowledge that the Baileys did not misappropriate any trade secrets or other confidential or proprietary information or files and despite having absolutely no factual basis for claiming that Wellspring obtained and used Advantage's trade secrets or confidential or proprietary information, Advantage further escalated its efforts to prevent, limit and restrict lawful competition by filing the above-captioned lawsuit purporting to allege multiple causes of action and claims for relief which have absolutely no basis in fact or law. Advantage, through its Complaint for Damages and Injunctive Relief, has made allegations without any factual support and Advantage's pursuit of litigation is an intentional and deliberate attempt to interfere with and disrupt Wellspring and the provision of wound care services by the Baileys and it is a deliberate and intentional attempt to adversely affect, interfere with, restrict and/or eliminate lawful competition.

12.

Advantage has engaged in unfair methods of competition and unfair trade practices in violation of La. R.S. 51:1405(A) and 1409(A) and the Counterclaim Plaintiffs have a claim for relief pursuant to La .R.S. 51:1409(A).

13.

Advantage has engaged in deceptive conduct, as well as conduct that is unethical, oppressive, unscrupulous and substantially injurious to the Counterclaim Plaintiffs and its conduct and actions offend public policy. Advantage has engaged in egregious, deliberate and intentional conduct and actions in order to effectuate unfair methods of competition and in order to eliminate, interfere with or restrict fair competition and lawful competition.

15.

Wellspring asserts that it has suffered economic damages as a direct result of Advantage's intentional and deliberate conduct as described herein.  This includes, but is in no way limited to, business losses and/or loss or delay of business opportunities which have and/or will produce economic and monetary effects and damages.

As demonstrated above and as set forth in the Counterclaim, Wellspring and the Baileys have made numerous and specific factual allegations regarding pre-lawsuit conduct giving rise to a plausible claim against Advantage for unfair trade practices under LUTPA. Advantage's flagship case, *Boudreaux* (2015), establishes as a matter of law that pre-litigation assertions that a party has

breached restrictive covenants and threats to enforce unenforceable restrictive covenants made outside of litigation can support an unfair trade practice claim and an unfair method of competition claim under LUTPA.[13] In fact, the conduct alleged by the Counterclaim Plaintiffs against Advantage in the Counterclaim exceeds the misconduct alleged by the plaintiff in *Boudreaux*.

Finally, Paragraph 14 of the Counterclaim states a separate claim against Advantage for attorney's fees, expenses and costs under La. R.S. 51:1409(A), for which such claim arises out of Advantage's filing of a LUTPA claim against Wellspring and the Baileys in this lawsuit. Citing Section 1409(A), the Counterclaim alleges that Advantage's LUTPA claim is groundless and brought in bad faith or for purposes of harassment which gives rise to a claim for relief for attorney's fees, costs and expenses against Advantage and in favor of the Counterclaim Plaintiffs. Advantage's Rule 12(b)(6) motion does not seek dismissal of this claim, which complies with all of the requisite pleading standards.

## VI.    ADVANTAGE'S ALLEGATION OF FAILURE TO PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(B) MUST BE REJECTED.

Under the terms of the statute itself, and the governing case authority, a claim does not have to be based on fraud or allege fraud to state a claim under LUPTA. See La. R.S. 51:1405(A). In its Memorandum, Advantage asserts that the Counterclaim is primarily based on allegations of "fraudulent statements and representations" and, as a result, must state with particularity the circumstances constituting fraud pursuant to Fed. R. Civ. P. 9(b).[14] However, "fraud" is Advantage's word. The word "fraud" appears nowhere in the Counterclaim. What the Counterclaim Plaintiffs do allege is that Advantage personnel communicated inaccurate and misleading information to customers and potential customers and it made misrepresentations to

---

[13] See *Boudreaux v. OS Rest. Servs., LLC*, 2015 WL 349558 (E.D. La. 2015).  See also *Luv 'N Care, Ltd. v. Jackel Int'l Ltd.*, 2020 WL 6881672 (W.D. La. 2020).
[14] Advantage's Memorandum in Support, p. 16, Doc. 18-1.

customers and potential customers in order to prevent those customers from doing business with Wellspring and the Baileys and in an effort to restrict and limit lawful competition.

LUTPA encompasses conduct which is unfair or deceptive. Under LUTPA, deception can come in the form of fraud, deceit *or* misrepresentation. *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, 783 F.3d 527, 553 (5th Cir.2015)(A business practice is "deceptive" under LUTPA when it amounts to "fraud, deceit or misrepresentation.") Accordingly, under LUTPA unlawful, deceptive conduct includes misrepresentations, or deceit, separate and apart from fraud. See *Nola Spice*, supra; see also *Rockwell Automation*, supra.

Advantage relies on *Rahman v. Allstate Ins. Co.*, 644 F.Supp.3d 231, 241 (E.D. La.2022), but Rahman is distinguishable and does not support Advantage's motion. In *Rahman*, the Court held the plaintiff to Rule 9(b)'s particularity standard even though the plaintiff did not use the word "fraud" in his LUTPA claim but alleged fraud in another count based on the same facts as his LUTPA claim, and the two claims were not made in the alternative. The Counterclaim at hand does not allege fraud in the LUTPA claim or anywhere else in the Counterclaim.

In *Rahman*, the Court cited a case actually analogous to the present case rejecting the same arguments made by Advantage in this case, i.e., *Mabile v. BP, P.L.C.*, 2016 WL 5231839 (E.D. La. 2016). In *Mabile*, the Court held that a LUTPA claim was not required to meet the heightened pleading standard of Rule 9(b) when the plaintiff did not "explicitly [allege] fraud or fraudulent conduct in his amended complaint as a basis for his LUTPA claim," as in the present case. *Id*. at 25.

*Mabile* also distinguished the case of *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F.Supp.2d 710 (E.D. La. 2009), relied upon by Advantage, stating that: "[U]nlike the plaintiffs in *Pinero*…who specifically alleged fraudulent misrepresentations under LUTPA and thus had to

satisfy Rule 9(b), Mabile has premised his unfair trade practices claim under LUTPA on allegations of non-fraudulent conduct by BP." *Id*. at 25.

Advantage's reliance on *Apollo Holding Co., LLC v. Roe,* 2025 WL 1474738 (E.D. La. 2025) is misplaced. In *Apollo*, the Court noted that the plaintiffs' LUTPA allegations failed to meet Rule 9(b)'s pleading requirements, "which apply to LUTPA claims that raise the issue of fraud." *Id*. at *16. In *Apollo*, the plaintiffs had generally alleged that the certain defendants "actively engaged in fraudulent conduct to…receive benefits from" and misuse their "proprietary information." *Id*. at *16. As to another defendant, the plaintiffs vaguely alleged that it was a "direct beneficiary of" and "active participant" in the unspecified "fraudulent conduct." *Id*. at *16. The Court held that, based on the foregoing, the alleged "fraudulent conduct" was not sufficiently described. Here, the Counterclaim does not even allege "fraudulent conduct."

The Counterclaim Plaintiffs submit that their LUTPA claims are governed by the pertinent decisions such as *Mabile*, supra, and *USI Ins. Servs., LLC v. Matthews*, 2019 WL 4882932, at *3 (E.D. La. 2019) where the Court found as follows:

> Defendants contend that Plaintiff's LUTPA claims amount to claims for fraud and that Plaintiff has failed to meet the heightened pleading standard required for fraud. Plaintiff argues the allegations in the complaint do not use the word "fraud" and do not allege that Defendants engaged in "fraudulent" conduct. Plaintiff, instead, asserts that its LUTPA claim is based on misrepresentations and false statements by Defendants. Additionally, Plaintiff claims that its allegations are sufficient to meet the heightened fraud standard.
>
> Plaintiff's LUTPA claim is based on the allegation that Defendants "knowingly used unfair methods of competition and deceptive acts, including the misrepresentations, deceptive acts, and improper use" of Plaintiff's confidential information. Plaintiff's LUTPA claim is not based on any alleged fraud. The Court, therefore, finds that Plaintiff is not required to satisfy the particularity requirement found in Rule 9(b), and that Plaintiff has sufficiently alleged facts to support LUTPA claims against Defendants.

*Id.* at *3 (FNs omitted.) See also *Baker Mfg. Co. v. Next Techs., Inc*., 2016 WL 952045, at *6 (W.D. La. 2016)(accord); and *Melito*, 2020 WL 2197916, at *4.

In any event, the Counterclaim meets the pleading requirements of Rule 9(b). As in *Mabile*, the LUPTA allegations in the Counterclaim offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or a mere "formulaic recitation of the elements." *Id*. at *26.

In *Mabile*, the factual allegations, taken as a whole, provided sufficient support for a LUTPA claim, i.e., that Mabile suffered "an ascertainable loss of money or movable property… as the result of the use or employment by another person of an unfair or deceptive method, act or practice...". *Id*. at *26. Although, the defendant argued that Mabile's LUTPA claim failed because Mabile did not provide greater detail on how the defendant misrepresented the subject issues, the Court stated that under *Iqbal* and *Twombly* a plaintiff is not required to provide "detailed factual allegations" to survive a motion to dismiss. Accordingly, the Court held that Mabile had plausibly stated a claim under LUTPA and denied the motion to dismiss Mabile's LUTPA claim.

As a final item, Advantage not only incorrectly asserts that Counterclaim Plaintiffs are asserting fraud as the basis of its LUTPA claim, but it also ignores the very specific and particularized allegations contained in the Counterclaim which include claims that Advantage personnel communicated inaccurate and misleading information and that they made misrepresentations to customers and potential customers.  In this regard, paragraph 6 of the Counterclaim specifically alleges that Advantage personnel communicated inaccurate and misleading information about the Counterclaim Plaintiffs which included, but was not limited to, misrepresentations about the existence of litigation and a lawsuit which, at the time, was not pending and that would prohibit them from doing business with the customers.  Counterclaim Plaintiffs further allege that Advantage personnel threatened customers that doing business with Wellspring or allowing the Baileys to perform wound care services for them would result in those customers being involved in litigation and in a lawsuit that did not exist. At the time of the

communications, there was no pending litigation and no lawsuit had been filed, thus making the communications misleading and inaccurate and which constituted misrepresentations. Counterclaim Plaintiffs allege that Advantage personnel's communications were intentional and deliberate and caused a delay in Wellspring onboarding and/or contracting with new customers and which caused Wellspring economic losses and missed business revenue opportunities.

As a result, Advantage's Rule 9(b) argument must be rejected.

## VII.    CONCLUSION

Wellspring, Chad Bailey and Racheal Bailey respectfully request that Advantage's Rule 12(b)(6) Motion to Dismiss their Counterclaim be denied. In the event that this Honorable Court is inclined to grant Advantage's Motion, then, as an alternative, the Counterclaim Plaintiffs respectfully request that they be permitted leave to amend the Counterclaim in accordance with Rule 15(a).

Respectfully submitted,

BABINEAUX, POCHÉ, ANTHONY
    & SLAVICH, L.L.C.

s/Joel P. Babineaux
Joel P. Babineaux, LA #21455 (T.A.)*
Email: jbabineaux@bpasfirm.com
Karen T. Bordelon, LA #20114
Email: kbordelon@bpasfirm.com
Sarah B. Dupont, LA #35048
Email: sdupont@bpasfirm.com
Post Office Box 52169
Lafayette, LA  70505
Ph: (337) 984-2505
Fax: (337) 984-2503
COUNSEL FOR WELLSPRING WOUND
CARE, LLC, CHAD BAILEY AND
RACHEAL BAILEY

**\* Board Certified Employment Law Specialist
Louisiana Board of Legal Specialization**