UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBERT MARRIOT MEDICAL CORP. D/B/A ADVANTAGE WOUND CARE, INC.,** | : : : : | **CIVIL ACTION NO.: 6-25-CV-00834-RRS-CBW** |
| **Plaintiff,** | : : | |
| **VERSUS** | : : : | **JUDGE ROBERT R. SUMMERHAYS** |
| **WELLSPRING WOUND CARE, LLC, ET AL.** | : : : | **MAGISTRATE JUDGE CAROL B WHITEHURST** |
| **Defendants** | : | |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Advantage replies in further support of its *Motion to Dismiss* (ECF 18) and to respond to arguments in Defendants' opposition (ECF 27). As explained below, Defendants mischaracterize Advantage's claims and requested relief, all to breathe life into an improperly pled LUTPA counterclaim. Defendants also uncritically rely on cases governing LUTPA counterclaims arising from the litigation process, which are heavily disfavored.

**I.     Defendants mischaracterizes the relief Advantage seeks.**

Defendants misstate that Advantage "does not seek an injunction or monetary damages against [Defendants]." (*Id.*, at p. 2). Advantage is, in fact, seeking monetary damages and ***narrow*** injunctive relief. *See, e.g.,* (ECF 1 ¶¶ 7, 62, 70, Relief Sought). Defendants' misstatement in this regard, however, reveals a misunderstanding as to why Advantage stresses, in its motion, that it is not seeking overbroad injunctive relief. *See, e.g.*, (ECF 18-1, p. 13). Advantage's point is that it seeks only the return and discontinued use of its business information by Defendants, which is a lawful request. *See* (ECF 1, p. 32, Relief Sought). This targeted conduct, ***unrelated to any non-compete and/or non-solicit provisions on which Defendants place an undue focus***, concerns the Baileys' breach of duties to Advantage while in its employ, their retention and use of Advantage's

1

business information in violation of return-of-property and non-disclosure provisions of their Employment Agreements, and their conspiracy with Wellspring to accomplish the foregoing. Advantage's actions in exercising its fundamental right to the judicial process—all in order to protect its business information and to recover damages for breaches of loyalty—do not qualify as *egregious* conduct under the facts and circumstances. *See Ring St., LLC v. Cypress Connects LLC*, No. 23-1486, 2023 U.S. Dist. LEXIS 166085, at *12-13 (E.D. La. Sept. 18, 2023) (citing *Newton v. Brenan*, 14-423 (La. App. 5 Cir. 12/16/14), 166 So. 3d 285, 288; *GR Rests., LLC v. Suzanne Savoy Santillo, LLC*, 18-637 (La. App. 3 Cir. 6/12/19), 275 So.3d 50, 60-61)) (all finding that a lawsuit that pleads cognizable claims did not form the basis of a LUTPA claim).

Indeed, LUTPA's purpose is to deter only "extremely narrow" and "egregious" conduct causing injury to competition. *Quality Envtl. Processes, Inc. v. I.P. Petro. Co.*, 2013-1582 (La. 05/07/14), 144 So. 3d 1011, 1025 ("[o]nly *egregious* actions involving elements of fraud, misrepresentation, deception or other unethical conduct will be sanctioned based on LUTPA") (emphasis added); *Sistrunk v. Haddox*, No. 2019 U.S. Dist. LEXIS 156996, at *12-15 (W.D. La. Sept. 12, 2019) (instructing that LUTPA prohibits only an "extremely narrow" range of practices on a case-by-case basis, dismissing a LUTPA counterclaim based on the filing of a lawsuit, and denying leave to amend). Because the limited relief Advantage seeks in this lawsuit would not restrain the lawful competitive activity of Defendants in any form, Advantage's lawsuit cannot form the basis of an unfair trade practice. *See Ring St.*, *LLC*, 2023 U.S. Dist. LEXIS 166085, at *5-13 (dismissing LUTPA counterclaim based on allegations that a lawsuit was filed in bad faith and designed to destroy a competitor); *Sistrunk*, 2019 U.S. Dist. LEXIS 156996, at *12-15; *Newton*, 166 So. 3d at 28 (affirming trial court's dismissal of LUTPA claim based on a "retaliatory lawsuit" among competitors); *GR Rests., LLC*, 275 So.3d at 60-61 ("GRR's attempt to exercise its

juridical rights by filing its detrimental reliance lawsuit is not an unfair trade practice under LUTPA"). To conclude otherwise under the facts of this case would open the flood gates to LUTPA counterclaims any time a competitor is sued and, equally troubling, such counterclaims would be nothing more than disguised and premature malicious prosecution claims.

Defendants' failure to seek dismissal of Advantage's claims, moreover, demonstrates that Advantage has pled cognizable claims and therefore has validly exercised its judicial rights. *See Ring St., LLC*, 2023 U.S. Dist. LEXIS 166085, at *12-13 ("Hence, as in *Newton* and *GR Restaurants*, given the facts and circumstances of this case (including, particularly, that Ring Street's claims against Cypress Connects have survived a motion for summary judgment), Ring Street's filing of its lawsuit against Cypress Connects does not rise to the level of an unfair trade practice under LUTPA, and Cypress Connects' LUTPA counterclaim must be dismissed."). This conclusion is buttressed by the fact that, at risk of belaboring the point, Advantage is ***not*** seeking to enforce any allegedly unenforceable non-compete or non-solicit provisions.[1]

## II.     The weight of LUTPA jurisprudence disfavors claims related to the litigation process.

Defendants uncritically cite outlying and distinguishable cases to argue against dismissal. For example, Defendants uncritically rely on the 2015 *Boudreaux* decision, *see, e.g.,* (ECF 27, at p. 15) (citing *Boudreaux v. OS Rest. Servs., L.L.C.*, No. 14-1169, 2015 U.S. Dist. LEXIS 8090 (E.D. La. Jan. 23, 2015)), wherein the court found that a former employee pled a LUTPA claim where he alleged: he was ***denied a position*** for which he was "well-qualified"; such denial was only due to "the existence of the noncompetition and non-solicit provisions in his Employment

---

[1] Advantage's Complaint references the non-compete and non-solicit provisions in the Baileys' Employment Agreements simply to provide the Court with a full picture, including how the Baileys, at least in part, excuse their conduct by invoking alleged hyper-technical deficiencies with them. The Baileys do not dispute, however, that they voluntarily agreed to those provisions, which are clearly aimed at protecting Advantage's business interests.

3

Agreement" with his previous employer; he was **unable to find employment** in his sole area of expertise due to enforcement efforts by his previous employer for over a year (to the point that he almost lost his house); and his previous employer engaged in "**multiple and repeated efforts to enforce**" the allegedly unenforceable restrictive covenants. *Boudreaux*, 2015 U.S. Dist. LEXIS 8090, at *5-7 (emphasis added).

There is a great deal of daylight, then, between the facts pled and weighed in the 2015 *Boudreaux* decision and the facts Defendants allege in their LUTPA counterclaim. The 2015 *Boudreaux* decision is inapplicable if for no other reason than the undisputed fact that both individual defendants—the Baileys—not only found suitable employment with Wellspring in their area of expertise *immediately after* they resigned from Advantage, but they also successfully converted Advantage's customers. And critically, as stressed *supra*, Advantage has *not*—unlike the employer in *Boudreaux*—sought to enforce any non-compete or non-solicit provisions in this case or any other legal proceeding, and it chose not to do so given the position on enforceability conveyed by the Baileys' legal counsel in routine pre-suit communications aimed at avoiding and/or resolving the parties' dispute. Advantage exercised restraint even though, as set forth in Advantage's opening brief, a good faith argument exists (now and at the time of the alleged pre-litigation communications) that—as a matter of law—the non-compete and non-solicit provisions may be enforced under precedent of the Third Circuit Courts of Appeal, which presides over Defendants. *See* (ECF 18-1, p. 10) (citing cases).[2] At a minimum, Defendants make no well-pled allegations—and certainly none that rise to the "egregious" level in the 2015 *Boudreaux* decision—that they were "substantially impacted" by the existence of, and Advantage's pre-suit reference to, competitive restrictions to which the Baileys voluntarily agreed. *See id.* at *11-12

---

[2] Defendants relegate this significant fact to a footnote. (ECF 27, p. 5 n. 10).

4

#110043885v10

(requiring "substantially injurious" conduct and noting that the former employee alleged his livelihood was "substantially impacted" by his former employer's enforcement efforts).

Defendants similarly uncritically rely on *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-0323 (La. App. 4 Cir. 10/01/14), 151 So. 3d 670 to support the proposition that a malicious lawsuit can support a LUTPA claim, which they argue militates against dismissal. (ECF 25-2, at 14). But the LUTPA claim at issue in *Prime* was filed ***after*** the termination of the underlying malicious lawsuit in question—a key argument raised in Advantage's motion—and it was filed alongside a malicious prosecution claim. *See id.* at 676 ("***Once the underlying suit was dismissed***, Prime filed the instant matter . . . alleging malicious prosecution . . . and a violation of [LUTPA][.]") (emphasis added). The *Prime* case therefore squarely supports Advantage's contention that Defendants' LUTPA counterclaim, as pled, must wait until ***after*** this lawsuit is terminated and ***only*** if Defendants obtain a favorable result (including that the Baileys were not soliciting customers while in possession of Advantage's information and/or soliciting customers whose business they had already started to divert while still employed by Advantage). *See id.*[3]

Defendants cite other outlying cases that have found egregious conduct related to the litigation process to support tenuous LUTPA claims, but those cases are likewise distinguishable. For example, in *F&M MAFCO, Inc. v. Ocean Marine Contrs., LLC*, a party pled a LUTPA claim when it alleged that a creditor not only improperly asserted a secured interest in the party's property, but also ***seized the property*** to force payment of a debt that the creditor knew was not owed to it. No. 18-5621, 2019 U.S. Dist. LEXIS 122066, at *13-14 (E.D. La. Jul. 23, 2019). The

---

[3] Furthermore, in the *Prime* case, the offending party deliberately dragged-out litigation for ***seven years*** with knowledge throughout that time that it had no damages and with the intent to eliminate a competitor. *Id.* at 673. Here, the parties have yet to even engage in discovery, and the egregious circumstances of the *Prime* are just not present.

5

egregious acts alleged in the *F&M MAFCO* case can hardly be compared to the standard adversarial litigation of this case, and the alleged loss of property in that case is far more grave than any speculative and alleged harm Defendants plead in their counterclaim. As another example, Defendants rely on *Inter'l Mezzo Techs., Inc. v. Frontline Aerospace, Inc.*, No. 10-397, 2011 WL 13160329 (M.D. La. Sept. 16, 2011), even though, in that case, the offending party back signed a key agreement and falsely claimed it was signed on that earlier date and, also, actually filed a lawsuit asserting a claim for violation of an invalid non-disclosure agreement that the offending party knew was invalid. *Id.* at *2. Advantage has engaged in no such egregious pre-suit conduct, and it has not knowingly sought to enforce, in a lawsuit, invalid contract provisions.

The decision in *Alpha Omega Publs., Inc. v. Mid-South Educ. Ass'n*—a case that stressed "the need for a case by analysis to determine whether particular actions constitute" a LUTPA claim—is equally distinguishable. No. 05-1482, 2006 U.S. Dist. LEXIS 109476, at *4-5 (W.D. La. Mar. 8, 2006). There, a software developer terminated contracts with a new competitor created in part by a former employee, thereby ensuring the competitor could not purchase necessary software for use with its clients. The software developer also contacted clients and told them that if they used the new competitor, it would likewise cut off such clients' access to the necessary software. *See id.* The situation in *Alpha Omega* is therefore inapposite. So too are the facts in *Melito v. Hopkins*, wherein a contracted Regional Manager actively worked to sabotage an entity's business and steer it to a competitor, even though he was still serving as its agent. No. 20-240, 2020 U.S. Dist. LEXIS 79467, at *13-14 (E.D. La. May 6, 2020). Defendants make no similar allegations in their counterclaim, which focuses only on Advantage's ligation-related conduct.

Next, the facts from the *In re Padco Energy Servs., LLC* decision are entirely different and *far* more egregious than Advantage's litigation-related conduct complained about by Defendants.

6

#110043885v10

No. 16-51390, 2019 U.S. Dist. LEXIS 54749, at *13-14 (where an offending party ***overbilled debtors*** and, when challenged, ***filed improper liens*** on oil wells in an effort to choke of their cash flow, drive them out of business, and force bankruptcy filings). Lastly, the decision in *Luv N' Care v. Laurain*, 2021 U.S. Dist. LEXIS 256117, at *54-55 (W.D. La. Mar. 29, 2021) concerned a motion in *limine*—***and not a motion to dismiss***—and rested on a competitor's "alleged deception before the [United States Patent and Trademark Office][,']" bad faith threats to competitors, and "objectively baseless" infringement claims. The decision in *Luv N' Care* did not analyze the cases cited *supra* disfavoring LUTPA counterclaims arising from the litigation process, and, moreover, the alleged conduct in *Luv N' Care* was more egregious—and specifically identified—than what Defendants allege in their counterclaim. Lastly, unlike the decision in *Luv N' Care*, this case obviously does not involve any abuse of the patent process, which is a system uniquely subject to abuse such that the evidentiary decision in *Luv N' Care* can be confined to its specific set of facts and claims. *See Pressure Prods. Med. Suppliers v. Quan Emerteq Corp.*, No. 06-121, 2008 U.S. Dist. LEXIS 144416, at *10-11 (E.D. Tex. May 16, 2008) (discussing the doctrine of "patent misuse" unique to patent cases); *see also Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1351-52 (Fed. Cir. 2010) (discussing how patent misuse gives rise to unfair competition).

### III.   Advantage's pre-suit communications are not "egregious."

Even though the Baileys do not—and cannot—allege any period of unemployment following their resignations due to any Advantage misconduct, Defendants nevertheless rely on the 2015 *Boudreaux* decision to argue that Advantage's alleged pre-litigation, short-lived threats of legal action concerning the non-compete and non-solicit provisions in the Baileys' Employment Agreements give rise to a LUTPA counterclaim. (ECF 27, pp. 25-29). This argument misses the mark, however, because, as noted *supra*, Advantage has cognizable claims to enforce those

7

#110043885v10

covenants under applicable state court appellate jurisprudence covering the area where Defendants reside. *See* (ECF 18-1, p. 10) (citing cases).[4] On this point, the 2015 *Boudreaux* court emphasized that "[a] party may threaten to avail itself of any legal right and, in doing so, does not foment undue duress **unless the right is abused or the threat of act [is] made in bad faith**." *Boudreaux*, 2015 U.S. Dist. LEXIS 8090, at *11 (emphasis added). Here, the Court must find—as a matter of law—that Advantage's alleged pre-litigation threats are not actionable because jurisprudence from Louisiana's Third Circuit Court of Appeal has not been definitively overruled, and because the Baileys do not dispute that they voluntarily agreed to the now contested provisions.[5]

On the discrete issue of pre-suit correspondence, Defendants do not allege that Advantage ***continued*** to make purported threats (either to the Baileys themselves or to Wellspring's customers) ***after*** the Baileys conveyed, through counsel, their position that the non-compete and non-solicit provisions at issue do not comply with Louisiana law. *See generally* (ECF 13) (making no allegation related to continued threats after the Baileys provided notice of their legal position). Nor do the Baileys allege with sufficient specificity the substance of the allegedly actionable communications to customers,[6] to whom they were made, their numerosity, or whether they were,

---

[4] Judge Drell recognized that the Louisiana Supreme Court has not definitively resolved the issue. *Ferrellgas, L.P. v. McConathy*, No. 10-00178, 2010 U.S. Dist. LEXIS 36447, at 13-14 (W.D. La. Mar. 15, 2010) (emphasis added) ("***By contrast, the Louisiana Third Circuit Court of Appeal 'has held that the failure to identify each parish by name does not automatically nullify the agreement; rather, its validity depends on whether the area is 'identifiable.''*** *Monumental Life Ins. Co. v. Landry*, 846 So. 2d 798, 801 (La. App. 3d Cir. 2003). In one such opinion, the court found 'identifiable' the parishes covered by a provision barring competition and solicitation 'within the parishes in which [the plaintiff] carries on a like business.' *Petroleum Helicopters. Inc. v. Untereker*, 731 So. 2d 965, 968 (La. App. 3rd Cir. 1999). The court reasoned that the employee plaintiff would 'surely be aware of the parishes in which [the employer defendant] conducts its business.' *Id*. Ferrellgas has put forth a very similar rationale in this case. ***The Louisiana Supreme Court has not definitively resolved this issue***.").

[5] The former employee in the 2015 *Boudreaux* decision resided in Terrebonne Parish, Louisiana, which falls under the supervision of the Louisiana First Circuit Court of Appeals. No. 2:14-cv-1169, ECF 1, ¶ 1.

[6] In contrast to vaguely pled communications with customers, pre-suit communications between the parties are protected under Rule 408, which also weighs in favor of dismissal, particularly considering the threadbare nature of Defendants' allegations.

in fact, knowingly false, particularly considering litigation has indisputably developed, the parties indisputably had pre-suit disagreements that they were negotiating, third-party subpoenas to customers are likely, and the Baileys did, in fact, sign agreements with competitive restrictions (which they contested, for the first time, after their separations).

Defendants' reliance on the 2015 *Boudreaux* decision—and other cases like it related to ***actual enforcement actions*** based on invalid competitive restrictions—to make a broad legal argument encompassing vaguely pled pre-suit correspondence is faulty for another reason. That is, the 2015 *Boudreaux* decision recognized that the Louisiana Supreme Court has only suggested ***in dicta*** that breach of an employer's obligation "not to enforce an illegal non-solicit agreement against its employee" is actionable under LUTPA.[7] *Boudreaux*, 2015 U.S. Dist. LEXIS 8090, at *11 (citing *Preis v. Standard Coffee Serv. Co.*, 545 So. 2d 1010, 1013 (La. 1989)). Unsurprisingly, in *Preis*, the former employer ***actually initiated an arbitration*** to enforce the disputed restrictions. *Preis*, 545 So. 2d at 1012. Defendants' suggestion, then, that *Preis* stands for the proposition that isolated pre-suit ***correspondence*** concerning invalid competitive restrictions *per se* supports a LUTPA counterclaim is overstated, as *Preis* does not at all stand for the proposition that ***any*** conduct undertaken by an employer concerning invalid restrictive covenants creates LUTPA liability. Moreover, the *Preis* decision analyzed *res judicata* principles, and its narrow holding is that any theoretical obligation under LUTPA not to actually sue to enforce an illegal restrictive

---

[7] Defendants also cite *Gearheard v. De Puy Orthopaedics, Inc.*, 99-1091, 2000 U.S. Dist. LEXIS 6473, at *17 (E.D. La. Mar. 16, 2000) for this same proposition. (ECF 27, p. 12). However, as was true in *Boudreaux* and *Preis*, the former employer in *Gearheard **actually brought a claim*** under the alleged invalid non-compete covenant. *Id.* at *6. The *Gearheard* decision does, however, include insightful instruction, as it noted a Louisiana appellate judge's concurring opinion expressing a concern that a proliferation of LUTPA claims based on the exercise of legal rights "would have a chilling effect on civil litigation." *Gearheard*, at *17 (quoting Judge Plotkins' partial concurrence in *Barbe v. A.A. Harmon & Co.*, 705 So. 2d 1210, 1227 (1998)).

9

covenant is identical to a theoretical obligation not to unlawfully interfere with a former employee's right to do business *for purposes of res judicata*. *Id.*

### IV. Rule 9(b) applies to Defendants' LUTPA claims.

Defendants do not dispute that they support their LUTPA counterclaim with allegations that Advantage made "false," "inaccurate," and "misleading" statements to Defendants themselves or to Wellspring's customers.[8] (ECF 27, p. 26). Nor do Defendants persuasively argue that such allegations fall outside of Rule 9(b)'s heightened pleading standards, even if they do not use the word "fraud" or "fraudulent." *Cf. Rahman v. Allstate Ins. Co.*, 644 F. Supp. 3d 231, 241 (E.D. La. 2022) (LUTPA claim based on misrepresentations subject to Rule 9(b) even though plaintiff did "not specifically use the word 'fraud'"); *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009) (Rule 9(b) applies to LUTPA claim based on misrepresentations). And while Defendants suggest otherwise, their LUTPA counterclaim clearly does not articulate the "who, what, when, where, and how" with respect to any alleged false statements made to Defendants' customers, which serves as an independent ground for dismissal. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997); *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). Defendants' vague and conclusory allegations in this regard must be disregarded when evaluating the sufficiency of their LUTPA counterclaim.

### V. Conclusion.

For the foregoing reasons and those set forth in Advantage's opening brief, Advantage's motion must be granted. Any different outcome would drastically expand the reach of LUTPA to encompass routine litigation steps.

---

[8] Alleged improper statements made between the parties and/or their counsel cannot give rise to a LUTPA claim, as no damages could flow from such statements, especially considering, here, the Baileys immediately began employment with Wellspring upon their resignations.

10

Respectfully submitted,

*/s/ Joseph F. Lavigne*
Joseph F. Lavigne (La. Bar #28119)
Michael A. Foley (La. Bar #35774)
JONES WALKER LLP
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8610
Fax: (504) 589-8610
jlavigne@joneswalker.com
mfoley@joneswalker.com
***Attorneys for Plaintiff, Robert Marriott Medical Corp. d/b/a Advantage Wound Care, Inc.***

## CERTIFICATE OF SERVICE

I certify that on October 15, 2025, a copy of the foregoing pleading was filed on all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Joseph F. Lavigne*
Joseph F. Lavigne (La. Bar #28119)

11

#110043885v10